50   103
36a  179

## ABSALOM STUBBLEFIELD

### *v.*

## LINUS GRAVES *et al.*

HOMESTEAD—*of second allotment thereof.* Where a homestead has been allotted to a debtor, out of premises sought to be subjected to the satisfaction of a debt, there may be a second allotment of homestead, out of the portion so assigned, to the same debtor, at the instance of another creditor—the only limitation being, that it shall be of the appraised value of one thousand dollars. *Quære,* whether such second allotment of homestead can be had at the instance of the creditor who was a party to the first allotment.

APPEAL from the Circuit Court of McLean county; the Hon. JOHN M. SCOTT, Judge, presiding.

This was a bill in chancery, in the McLean Circuit Court, filed by Absalom Stubblefield, against Linus Graves, Samuel B. Evans and others, claiming, among other things, a prior lien upon a certain tract of land containing $23\frac{33}{100}$ acres. The bill alleges a loan of money by complainant to Graves, to secure which, Graves, on the 9th of January, 1858, executed a mortgage on the land in question, which was filed for record

on the same day, and duly recorded on the 1st day of February, 1858.

It appears, as is alleged in the bill, that one Joshua Wright had a prior mortgage on the same tract of land, which he foreclosed, and sold a part of the land, receiving a deed therefor, which left remaining about five acres off the east side of the tract, being part of the east half of the southwest quarter of section 3, in township 23 north, of range 3 east. It is alleged that whatever interest the defendant Evans may have in this tract of land, it is subservient to that of complainant.

The bill prays that complainant's mortgage may be decreed to be a prior lien, and for a foreclosure and sale.

At the March term, 1866, Evans answered the bill, denying the prior lien of complainant, and alleging the same to be in himself, in virtue of a mortgage from Graves to him, executed and delivered on the 8th day of January, 1858, to secure the payment of money loaned by him to Graves, and filed for record the same day, and recorded on the 29th day of that month. At the same time, Evans filed his cross-bill, referring to his answer to the bill of complaint, and setting out the mortgage, averring that it was unsatisfied, and prior in date to the mortgage by Graves to complainant.

The cross-bill then alleges that Graves is the head of a family, and residing upon this tract of land with his family, as a homestead. It is alleged that the premises are worth $4,000, and are so susceptible of division that a portion of the land, with the dwelling house, to the value of $1,000, can be set off to him, and the remainder sold to satisfy the mortgage.

The prayer of the cross-bill is, that the premises, over and above the value of $1,000, be sold, and the proceeds applied to the payment of the mortgage.

Graves answered the bill of complaint of Stubblefield, admitting the note and mortgage, but alleging, that at the time Wright foreclosed his mortgage, he was living on the premises with his family, claiming it as his homestead; that appraisers

were appointed by the master in chancery, to appraise and set off to him such part of the tract, including the dwelling house, as, in their opinion, should be of the value of $1,000, which resulted in their setting off as a homestead the five acres in controversy.   These proceedings Graves sets up in bar of the foreclosure and sale.

Stubblefield answered the cross-bill filed by Evans, in which he denies that Evans' mortgage is in force and unpaid and a prior lien, and alleges that after Graves made the mortgage to Evans, he conveyed to Evans a large tract of valuable land, containing about 480 acres, in trust, and without consideration, except his indebtedness to Evans, and some incumbrances which Evans discharged.   He alleges that the portion Evans has sold and what he retains, exceeds in value the amount paid by Evans to relieve it from incumbrances, including the amount due from Graves on the mortgage; and he insists that the conveyance of this land was, in equity, a mortgage, and that Evans should render an account of all the money he has paid on the land, and of all money received by him from sales thereof, and of the value of the part retained, and of the rents and profits received, so that it may be determined what amount, if any, is due Evans.

Graves filed his answer to the cross-bill, admitting the execution of the note and mortgage, and that they are unsatisfied, and sets up his homestead right.

At the time complainant answered Evans' cross-bill, he took leave to amend his original bill, to which Evans filed an answer. The amended bill alleges, among other things, the mortgage to Wright of this and other land, its foreclosure and the sale to Wright, besides this tract in controversy, other valuable land for much less than its value, and he, fearing that Graves would not be able to redeem it, proposed to Graves that he, complainant, would redeem it and pay off all incumbrances, and would sell the land at such time as complainant and Graves might deem most advisable, and that upon such sale complainant should be reimbursed for all moneys advanced

by him to pay off incumbrances, with interest on the same, and would credit the surplus on the mortgage, which proposition Graves refused to accept, but soon after conveyed all his interest in these lands to Evans, who paid off the incumbrances, and procured deeds to be made from the Illinois Central Railroad Company, who held the legal title, directly to himself. The amended bill then charges that this conveyance was made without any consideration, except the indebtedness of Graves to Evans, as stated, and charges that Evans, since he received the deed, has sold a portion of the land for a high price, and still retains a part of great value, and demands an account of both, but charges that what he has sold and what he retains is more than sufficient to repay him all the moneys advanced by him, with interest on the same, and to cancel all the indebtedness of Graves to him ; and he further charges that Evans took this conveyance, either as trustee for Graves, and for his benefit, or as a mortgage, to secure his debt; that he took it with the understanding and agreement, if he could make anything out of the land, more than sufficient to repay his advances, Graves was to have the benefit of the surplus, and alleges that Evans, in holding all this land and still claiming his mortgage debt was unpaid, was a fraud upon complainant, and he prays that Evans be required to render an account of all lands conveyed to him by Graves, either in fee or by assignment of the equitable title, and also of all moneys paid by him to discharge the incumbrances on the land, and of all moneys received by him from the sale of portions of this land, and of the value of the part retained, and of the rents and profits, and that a decree may be rendered, that after Evans is reimbursed, the surplus of money and land in his hands shall be applied to the payment of the note and mortgage to him, or that the same shall be decreed to be subject to complainant's mortgage.

Evans, in his answer, denies taking this land in trust for any purpose, or as a mortgage, or that he ever reserved the land from the sale to Wright, but says that Graves

purchased of the Illinois Central Railroad Company section 20 in township 26 north, range 3 east, on credit, and received a bond for a deed, with the usual clause of forfeiture. Graves was in default to the company, and was about to lose the land under the forfeiture clause, and being indebted to Evans in about the sum of six hundred dollars for money paid and advanced in addition to the mortgage, and the land then not worth more than the balance due the railroad company, and Graves having become insolvent, he proposed to Evans to take the land and make what he could out of it for his own benefit. At this time Evans did not know that Wright had a mortgage upon it, but afterwards ascertained that Wright had sold the land under a mortgage; that the time of redemption had expired, and Wright had received a deed for it. Evans then made an arrangement with one Joseph Stewart, to whom Graves had sold 240 acres of the land, that he should purchase of Wright his title to the entire section, which Stewart did, and received Wright's deed therefor, and then conveyed to Evans 400 acres of the same, he retaining 240 acres for himself, being the amount he had previously purchased of Graves. Afterwards, Stewart and Evans paid the balance due the railroad company, in the proportions severally due. Denies selling any of this land, or that Graves has any interest in it, and that he is under any sort of obligation or contract with Graves to credit him anything upon his note and mortgage for any profit he may make out of the land, or to pay Graves any part of the proceeds, claiming that the mortgage is in full force and unsatisfied.

Replications were duly filed, and the cause was heard on the bill, amended bill and exhibits, and the answers thereto, and upon the cross-bill and answers thereto, and upon oral testimony. A decree was passed declaring Evans' mortgage a prior lien, and denying the claim set up by Graves, that the premises, being his homestead, having been so set off to him in Wright's foreclosure suit, they were not liable to be again

levied upon, and a homestead allotted in the same a second time.

From this decree Stubblefield appeals, and assigns as error this finding of the court, that Evans' mortgage be first paid; and Graves assigns as error, that the homestead should be again allotted out of the mortgaged premises.

Messrs. WILLIAMS & BURR, for the appellant.

Mr. WM. H. HANNA and Messrs. GREENE & LITTLER, for the appellees.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

Two questions are presented by this record. First, did Evans receive the transfer of the bond of the Illinois Central Railroad Company in trust for any purpose; and second, can a homestead be allotted a second time to the same party out of the same premises?

The first depends upon the facts proved, and they will be examined in vain to find any ground for the assumption that this equitable title of Graves to section 20, was assigned for any trust purpose, or that it should be considered as a mortgage. Graves, in his testimony, denies it. He says he was unable to pay his debts, and thought if he could dispose of this land at a fair value he could pay; he could not make any sale; could not pay the interest on the debt; went to Evans and told him he could neither pay for the land nor sell it, and that he must take it and do the best he could with it; that he had no money to pay him for the money he, Evans, had advanced on it. Evans hesitated about taking it, but finally agreed to take it. There were more than five thousand dollars due the company on the land when Evans agreed to take it, besides interest. The land was nearly all enclosed, and about three hundred acres broke up. Before he let Evans have it, he tried to get complainant to take it, but he refused:

then tried to get him and his brother, John Stubblefield, to take it, but they gave him no encouragement. There was no arrangement or understanding between Evans and Graves that Graves was to have any benefit out of the land if it sold for more than Evans paid out on it. The transfer was an absolute one, without any secret or other trust, and therefore the maxim quoted, " once a mortgage always a mortgage," has no application.

The sale was absolute to Evans. The land, in the condition the payments were, more than five thousand dollars being due upon it, was unsaleable, and worth but little in the market, if there could be said to be any market for it. Stubblefield, himself, testifies he did not think the land worth much. Besides the amount due the railroad company, there were the advances Evans had made to pay the interest on the railroad debt, amounting to several hundred dollars, and in addition, Wright's interest, for which he had obtained a deed under his mortgage sale, had to be paid for, so that it may be safely said, Evans paid the full value for that portion of the land he obtained.

Upon the other question, can a homestead be assigned to the same party out of the same premises a second time? We think there can be no question about it. When Wright foreclosed his mortgage on the twenty-three acre tract, and was proceeding to sell the same, the homestead claim was interposed, and the master in chancery, in conformity to the statute, had the tract divided, and five acres, part thereof, and then worth $1,000, was allotted to Graves, on which he then resided, and has, ever since, resided. This was near nine years ago, and at the time of this decree of foreclosure by Evans, the five acres thus set off, which were appraised at $200 per acre under Wright's decree, the weight of testimony is, is now worth $500 per acre. The law gives to a debtor a homestead of the value of $1,000 and no more, which is exempt from execution or forced sale. No part of our State, within the last nine years, has improved, and its lands advanced in price,

more rapidly, than in the locality of these premises, and while a homestead of the value of $1,000 can be had in them, and leave a large overplus for creditors, we can perceive no reason why it should not be divided a second time. All the debtor can demand is, a homestead of that value. Evans was no party to the assignment of the homestead in the first instance, and no rights as against him can have been acquired thereby by Graves which ought to preclude Evans from collecting his debt, or some portion of it, sufficient being left Graves to satisfy his homestead right. As suggested by counsel, if a man desires to keep his homestead from his creditors, he has only to execute a mortgage to a friend, have it foreclosed, procure the homestead to be set off, and then, however much it may appreciate in value, hold it in defiance of his creditors. Suppose, nine years ago, a tract of land containing ten acres, part of a large tract near the city limits of Chicago, had been valued and set off as a homestead, it being then of the value of $1,000, and on this land, the resident head of the family had erected costly buildings and improvements, by means of which, and the rise of property in that locality, its value now should greatly exceed one thousand dollars, by what principle of right, law or justice, could the claimant insist upon holding the tract as a homestead, when one-tenth of the tract would fully satisfy the homestead right? We can see none. The principle is the same if there be but one city or town lot. If it is of greater value than $1,000, and can be so divided as to leave a homestead of the value of $1,000, a division ought to be had. And there is no hardship in this, for under the statute, the claimant can be deprived of his homestead by the payment of $1,000 by the creditor who is proceeding against it. A debtor, being unable to pay his debts, has no right to a homestead of greater value than $1,000. By securing one to him, of that value, his rights are satisfied and the requirements of the law fulfilled.

The court decreed properly, that Evans' mortgage was a prior lien on this land; that the sale of Graves' equitable

claim to the railroad land was absolute, free from all trusts and conditions, and that a homestead right can be assigned in the same premises to the same debtor a second time, the only limitation being that it shall be of the appraised value of $1,000.

For the reasons given, the decree of the circuit court is in all things affirmed.

*Decree affirmed.*