CASE 84—ACTION TO ANNUL ALLOTMENT OF HOMESTEAD—
NOVEMBER 3.

# Gowdy, Administrator v. Johnson.

APPEAL FROM TAYLOR CIRCUIT COURT.

1. HOMESTEAD—NATURAL ENHANCEMENT IN VALUE—REVALUATION.—Where a homestead has been allotted to an insolvent debtor, no subsequent enhancement in value in the realty allotted will authorize a creditor to have an execution levied and the homestead revalued. Whether an increase in value produced by the fraud of the homesteader, or by any extraordinary circumstance, such as the discovery of a mine, would authorize a creditor to relief in a court of equity is not necessary now to determine.

2. SAME—VALUATION—FRAUD AND MISTAKE.—It is settled law that the action of persons appointed to appraise a debtor's homestead can not be impeached except for fraud or mistake; and mere mistake in value is not enough.

3. SAME—LIMITATION.—It is too late to impeach the appraisers' finding of value for fraud or mistake after the expiration of ten years from the allotment of homestead.

4. SAME—PRACTICE—DEMURRER TO RAISE QUESTION OF LIMITATION.—Where it appears from the pleading asserting the fraud or mistake that same occurred more than ten years before the action of the appraisers was attacked it is proper to sustain a demurrer to the pleading.

5. HOMESTEAD—FAMILY.—A homestead right once acquired will not be lost by the homesteader's ceasing to have a family.

Gowdy, Admr. v. Johnson.

W. C. McCHORD FOR APPELLANT.

1. Under the statute (Ky. Stats., sec. 1702), only a person who is a *bona fide* housekeeper with a family is entitled to a homestead. If the appellee was not a *bona fide* housekeeper with a family he was not and is not now entitled to a homestead in the land, and on demurrer it is conceded that he was not a *bona fide* housekeeper with a family. The case of Stults v. Sale, 92 Ky., 5, is not inconsistent with this contention. In that case the debtor had living with him a daughter, an invalid brother and a mother-in-law.

2. Admitting that the appellee was a *bona fide* housekeeper with a family, he is nevertheless not entitled to a homestead when it is alleged that the allotment of the homestead originally made was the outcome of a mistake in the valuation of the ninety-two acres and was procured by fraud on the part of the appellee. Vallandingham v. Worthington, 85 Ky., 83; Lawrence v. Fidelen, 6 Bush, 55; Loudon v. Yager, 91 Ky., 57; Caldwell v. Taylor, 17 Ky. Law Rep., 781.

3. An enhanced value of the homestead after its allotment to an insolvent debtor is liable to be seized and sold under execution. Wilson v. Calvert, 15 Ky. Law Rep., 489; Turner, Guardian v. Turner's heirs, 11 Ky. Law Rep., 767; 37 Cal., 180; Thompson on Homesteads, sec. 109; Waples on Homestead and Exemptions, 216; Am. & Eng. Enc. of L., vol. 9, 463.

GARNETT & GARNETT AND H. S. ROBINSON FOR APPELLEE.

1. It was too late for the appellant to ask relief on the ground of fraud or mistake on the part of the original appraisers after the expiration of fifteen years. Ky. Stats., sec. 2519. Although appellant was not a party to that appraisement, the appraisement and allotment were matters of record of which the appellant and all others were charged with notice. An action to recover land conveyed by deed on the ground of fraud or mistake in its execution, is an action for relief on the ground of fraud or mistake and the five years' statute applies. Oldham v. Armstrong, 7 Ky. Law Rep., 674; Packard v. Beaver Valley Land & Mining Co., 96 Ky., 249; 16 Ky. Law Rep., 451; City of Louisville v. Anderson, 79 Ky., 334; Sanders v. Wade, 17 Ky. Law Rep., 205; Pearson, Roberts & Co. v. Westerfield, 17 Ky. Law Rep., 224; Hampton v. Bailey, 9 Ky. Law Rep., 423.

2. The right to a homestead having once attached, a debtor did not lose it by losing his family.  Stults v. Sale, 92 Ky., 5.

W. C. McCHORD FOR APPELLANT IN A PETITION FOR REHEARING.

Additional citations:  McMurray v. Shuck, 6 Bush, 111; Thorn v. Darlington, 6 Bush, 448; Bell v. Keach, 80 Ky., 43.

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

On June 26, 1879, one Christie caused an execution to be levied on one hundred and twenty-three acres of land belonging to his debtor, the appellee, Johnson, who was a housekeeper with a family and entitled to a homestead. Appraisers Cundiff and Griffin were accordingly selected by the officer levying the execution to set apart the homestead, and did so by giving the debtor ninety-two acres of the tract.  The residue of the land was sold by the officer. On November 5, 1883, the appellant, Gowdy, caused an execution against Johnson to be levied on the ninety-two acres theretofore laid off as a homestead; and appraisers Sublett and Burress were selected, and they set apart the entire tract to the debtor as a homestead, at $828.  On November the 20th of the same year another execution issued on the same judgment, and appraisers Taylor and Shreve set apart the same tract, valuing it at $969.  Two other executions were issued subsequently, but no further effort seems to have been made to subject the homestead to the debt until December, 1894, when another execution issued, and appraisers Kerr and Romine set apart twenty-nine acres of the tract as a homestead, valuing it at the statutory limit of $1,000.  The officer then proceeded to sell the residue under the execution, when the plaintiff therein bought it at the price of $800, a sum considerably less than his debt and interest.  Johnson then instituted this action in equity to have the levy and sale declared

void, and his title and right quieted to the homestead as originally laid off. The answer of Gowdy sets up at length various matters supposed by him to authorize the revaluation of the homestead, and the levy on, and sale of, the excess of land over the value limit of the statute. Among other things, he avers that, as he was no party to the Christie execution, he is not bound by the action of the appraisers in setting apart the ninety-two acres; that as the Christie debt was small, and the residue of the tract left for sale was ample to pay the debt, the proceeding was merely formal; that as a matter of fact the ninety-two acres of land at that time were worth at least $1,500 or more—a fact well known to the appraisers—and their action was, therefore, fraudulent; that he is not estopped by the action of subsequent appraisers under his execution; and that since 1883 the land has increased in value to the extent of $500 at least. He avers, further, that, prior to the last levy and sale under his execution, the debtor, Johnson, ceased to be a housekeeper with a family.

We are of opinion, as held by the chancellor on demurrer, that these averments do not constitute any reason whatever for disturbing the original setting apart of the ninety-two acres to Johnson as a homestead under the Christie execution. It is settled law that the action of the appraisers is final and conclusive against the world, unless impeached for fraud or mistake. The mistake meant is not one of mere judgment with respect to the value of the land set apart. That is the precise thing they are called on to do—value the land and set it apart. If, intending to set apart, by fifty acres, they should, in fact, set apart, by mistake, one hundred acres; this would afford ground for relief to any complaining creditor. Nor can there be relief in this case on the

ground of fraud. The answer declares that more than ten years have elapsed since the alleged fraud (section 2519, Ky. Stat.), and as relief against fraud or mistake should be sought within five years from the discovery thereof, and, in any event, within ten years from the act complained of, the averments were insufficient to afford ground for relief, and it was proper to so declare on demurrer.

It was not denied that Johnson was a housekeeper, and in the possession of the ninety-two acres, when Gowdy obtained the new appraisement, and levied on and sold the residue of the tract; his averment on this subject being simply to the effect that Johnson had ceased to have a family. This question has been authoritatively settled by this court in Stults v. Sale, 92 Ky., 5 [17 S. W., 148], where it was held that while it was essential to the creation of the homestead right that the debtor should have a family, it was not esential to the continuance of the right. The loss of his family, as by death or marriage, did not deprive him of the right.

The only remaining question is to ascertain what effect, if any, is to be given the averment of Gowdy, presented in the nature of a counterclaim, that the value of the homestead had increased to the extent of at least $500 since 1883. He avers that it is now in fact worth $2,500, and expresses his willingness to pay $2,000 for it. Whether the fact that the homestead, as originally established, has so increased in value as to exceed the limit of value prescribed in the statute, may authorize a revaluation and reassignment, is a question not free from difficulty. It seems not to have been determined in this State, and in other States the courts have not agreed. In Missouri the statute seems to be quite similar to ours, and in Beckner

v. Rule, 91 Mo., 62 [3 S. W., 490], it was said: "There is not a provision in the statute which looks to the conclusion that, when a homestead is once set off, it can not be revalued. . . . The debtor may have a homestead, but he must take and hold it subject to the fluctuations in value. If, in course of time, it should increase in value, so as to be worth more than the statutory limit, it may be assigned again, and the excess applied to payment of his debts. If the assigned homestead should depreciate in value, he may add to it, and claim a revaluation himself." In Illinois the same rule seems to prevail. Stubblefield v. Graves, 50 Ill., 103. In Tennessee, under a similar statute, the opposite conclusion was reached. In Hardy v. Lane, 6 Lea., 380, it was said: "There is nothing in the act from which it can be inferred that it [the homestead] is subject to repeated valuations, if perchance it may appreciate in value, or be estimated at a higher value by proceedings subsequently instituted for this purpose. The policy of the act is to secure a fixed and permanent abode and home for the head of the family, his wife and children, in the possession of which they should not be disquieted and disturbed, if by their industry they so far improve the premises as to make them really more valuable than they were when first assigned to them. Upon the construction contended for, i. e. that the homestead must always be kept to the exact value first assigned to it, the occupants would be constantly liable to the annoyance of new suits to ascertain, by the speculations and opinions of creditors and others, whether the homestead had not appreciated in value." In North Carolina (Gully v. Cole, 96 N. C., 447) [1 S. E., 520], it was held that, as no provision was made in the statute for laying off the homestead a second time, it could not be done, in the absence of fraud or irregular-

ity in connection with the assignment. But whether the creditor might have an equitable remedy in case the homestead had greatly increased in value was a question not decided, although mentioned.

Our statute provides that, in addition to the personal property exempted from sale, there shall be exempt from sale, under execution, attachment, or judgment, except to foreclose a mortgage given by the owner or for purchase money due therefor, so much land, including the dwelling house and appurtenances owned by the debtors who are actual *bona fide* housekeepers with family resident in this Commonwealth, as shall not exceed in value $1,000. Other sections provide for valuation and allotment, and no sale is to be made of the homestead unless it is of greater value than $1,000, and is not divisible without great diminution of its value. We thus see that the thing attempted to be protected from sale is the land—the homestead itself. The object of the statute, as of all statutes of like character, is not so much to exempt a certain sum of money from subjection to debt or land of a certain value, but it is intended to protect the homestead itself— the dwelling house and appurtenances—to the end that the citizens of the Commonwealth may be home owners. The matter of value is a mere incident—a proper one, it is true, as our law-makers have conceived it to be the better rule that some limitation in value should be applied. In some other States, we believe, no limitation of value is prescribed.

We have already seen that the act of setting apart the homestead, whether by the sheriff or by commissioners appointed under order of court, is a final and conclusive act. In effect, the act is an adjudication—a judicial procedure *in rem*—not to be disturbed except for fraud or mistake, as

in other adjudications. We think this judgment in the homesteader's favor is, in effect, a judgment that he is the permanent holder of a certain described tract of land, and, is entitled to the possession of it so long as it remains his homestead. The matter of its value, at most only an incident controlling the quantity of the assignment, is no longer a question of importance or interest to the owner and homesteader after his rights are once fixed to a particular boundary. That question is a closed one. It was never other than a preliminary one, a condition precedent, as it were, to the final assignment of the homestead by metes and bounds. When that is fixed, the ownership and right of occupancy is fixed. We regard it as altogether repugnant to the policy and object of our homestead law that this fixed right of occupancy shall be made to depend on the fluctuations of the real estate market. How often might it happen that homesteads of the prescribed value as originally assigned, and not susceptible of further division, would have to be sold, upon an advance in the market? It is against the policy of the law that any homestead be sold at all, and it is to be laid off—set apart—in all cases except where *great* diminution in value would result by a division. It is sold then as a matter of necessity, and the conditions which give rise to the necessity of selling the homestead of the citizen ought not to be multiplied or increased, after his rights have once been judicially determined and fixed of record.

The bad effect on the homesteader of rendering his habitation unstable, and increasing his anxiety for the continued shelter of his family, is not to be overlooked. While it is said that the State by such statutes is conferring merely a favor or privilege on the debtor, it is to be remembered that the State gets value received. It comes to

be supported in time by a citizenship interested in the State and tied to her soil, of independent home owners, and not of transient and uncertain tenants. It was aptly said by Mr. Benton in the Senate of the United States that "tenantry is unfavorable to freedom. It lays the foundation for separate orders in society, annihilates the love of country, and weakens the spirit of independence. The tenant has in fact no country, no hearth, no domestic altar, no household god. The freeholder, on the contrary, is the natural supporter of a free government; and it should be the policy of republics to multiply their free holders, as it is the policy of monarchies to multiply their tenants." As already stated, we have heretofore decided, in effect, that once a homesteader always a homesteader. And we think is equally clear within certain limitations as to occupancy and possible exceptions to be noticed, once a homestead always a homestead.

Learned counsel suggest that a gold mine might be discovered on the premises of the original assignment as made. If so, or if an extravagant residence were erected on the premises, there would likely be found some equitable remedy for the creditor. The law will not brook fraud on the part of the homesteader, and, if extraordinary outlays of money or property are put on the exempted premises beyond what is reasonably necessary to the profitable use and comfortable enjoyment of the home as such, it might afford ground for the interposition of a chancellor. In the case before us there has been a presumably natural increase in the value of the premises of $500, in a space of some ten or a dozen years; and the doctrine contended for would have permitted the appellant, or some other creditor, to have cut off a part of the homestead every year of the ten. The result even then would have to be based on

mere opinions and speculations as to value, reached often after years of constant legal warfare. However, we have before us no gold-mine case, or one involving any fraud on the part of the appellee, or unreasonable outlay on the premises, or the question of rapid and extraordinary inflation of prices. It will be time enough to consider such cases, if any such should arise, when they are reached. The judgment granting the appellee the relief sought and dismissing appellant's counterclaim is affirmed.