THOMAS W. BREWINGTON et al., Appellants, v. JAMES BREWINGTON et al.

Division One, April 1, 1908.

1. **HOMESTEAD: Privilege and Estate.** Under the peculiar wording of sections 3616 and 3617, Revised Statutes 1899, the homestead right during the lifetime of the owner of the fee may, by way of analogy, at least, be defined as a privilege, an exemption from levy and sale under execution; but, under section 3620, a different character or quality of homestead descends to the widow and minor children on the death of the owner. That section imports an estate, and, under it and by virtue of it, an estate vests *instanter* on the death of the owner in the widow and minor children—a life estate in the widow, determinable by remarriage, and an estate for years in the minor children, determinable as to each when he reaches his majority—and necessarily these estates vest in them with the incidents of such estates.

2. ———: ———: **Incidents: Revaluation.** The incidents of the homestead right during the life of the homesteader, and the incidents of the life estate and estate for years, vested in the widow and minor children, respectively, on his death, differ naturally in essential features. The homesteader's right or privilege may swell or shrink in value and is subject to revaluation at any time during his life; but when an estate is vested for life or for years, it is fixed for a prescribed term; and its owner is seized for the term, and in consequence there can be no revaluation of the homestead estate once legally assigned to the widow and minor children.

3. ———: **In Minor Children: Revaluation.** Where a court of competent jurisdiction (the probate court), proceeding under the statute, has once severed and set out a homestead to the widow and minor children in the real estate of the deceased owner of the fee, the homestead estate vested in them cannot, in the ab-

sence of fraud in the proceeding, be revalued and a greater or less extent of land be set apart to them, on a showing that it has since the assignment increased or decreased in value.

4. ————: **Partition: Increase in Value.** Where the homestead has been set out to the widow and minor children, it cannot be partitioned among the heirs, upon the death of the widow, prior to the time the youngest child attains its majority, however much it may increase in value, nor can it be revalued and reassigned.

5. ————: ————: ————: **Severance and Sale: Statute.** Section 3625, Revised Statutes 1899, providing that whenever the land, in which a homestead shall exist, shall exceed the statutory maximum value and extent, "and a severance of such homestead would greatly depreciate the value of the residue of the premises, or be of great inconvenience to the parties interested either in the residue or in such homestead . . . . the court may order the sale of the whole premises, and apportion the proceeds among the parties," may have some bearing and be called into play, if as between the debtor and creditor the homestead cannot be severed without great prejudice to all concerned, or if the homestead estate of the widow and minor children cannot be severed and set out without such inconvenience and loss. But it cannot be said to relate to the estate of the widow and minor children after the homestead has once been valued, severed and set out to them.

6. ————: ————: ————: **Unsaleable Residue: This Case.** After the death of the homesteader, by regular proceedings in the probate court, a homestead, consisting of 160 acres of land and valued at $1,500, was set off to his widow and minor children, some of whom are yet minors. There were other lands, and it is charged and admitted that they cannot be sold or profitably used apart from the homestead tract, and it is further admitted that the homestead tract is now worth $2,500, and that the widow is dead. *Held*, that the homestead tract cannot be partitioned during the minority of any of the children, nor can it be revalued and homestead again admeasured, nor can it be sold and the proceeds distributed under Sec. 3625, R. S. 1899.

7. ————: **Statutes: Construction.** Homestead laws are not in aerogation of the common law, and are not, therefore, to be strictly construed.

Appeal from Madison Circuit Court.—*Hon. R. A. Anthony,* Judge.

AFFIRMED.

211 Sup.—4

*E. D. Anthony* for appellants.

(1) Whenever any dwelling-house, outbuilding and the lands in connection therewith, in which a homestead shall exist, shall exceed the respective value mentioned in section 3616, and a severance of such homestead would greatly depreciate the value of the residue of the premises, or be of great inconvenience to the parties interested either in such residue or in such homestead, either party may apply to the circuit court, by petition, setting forth the facts, for relief; and if it shall appear that such homestead cannot be occupied in severalty without great inconvenience to the parties interested in such homestead, or in such residue, etc., or if the case requires it, the court may order a sale of the whole premises, and apportion the proceeds, and may ascertain the value of the homestead interest, etc. R. S. 1899, sec. 3625; Beckner v. McLinn, 107 Mo. 277. (2) A creditor or party in interest, where homestead and residue of land out of which homestead has been carved or set apart is held in common, "by proper steps," may "attack the former allotment of the homestead as to quantity or value." Macke v. Byrd, 131 Mo. 690. (3) A homestead cannot be claimed in land exceeding in value the statutory limit. Blandy v. Asher, 72 Mo. 27. (4) Where the statutes provide a remedy, as in this case, section 3625, the court must exercise some of the alternatives, if it shall appear the facts for relief bring the case within the purview of the law, and may not refuse to grant relief under the petition. (5) In all cases where lands are held in tenancy in common or coparcenary, including estates for life or for years, it shall be lawful to partition, etc. R. S. 1899, sec. 4373; Rolf v. Timmermeister, 15 Mo. App. 249.

*John H. Chitwood, H. Clay Marsh* and *David M. Tesreau* for respondents.

· (1) The homestead is a statutory right secured to the widow and minor children. The minor children cannot be deprived of the statutory right. The homestead right is a sacred and vested estate. Elstroth v. Young, 83 Mo. App. 257; West v. McMullen, 112 Mo. 411. (2) Under section 3620, the homestead shall pass to and vest in such widow and children, and shall continue for their benefit until the youngest shall attain its legal majority and until the death of the widow. Wilson v. Johnson, 160 Mo. 515; In re Powell's Estate, 157 Mo. 151; Goode v. Lewis, 118 Mo. 357; Hufschmidt v. Gross, 112 Mo. 649; Rhorer v. Brockhage, 86 Mo. 545; Rogers v. Mayes, 84 Mo. 520; Adams v. Adams, 82 S. W. 66. (3) Plaintiffs did not state facts sufficient in their petition to authorize the court to order sale of the homestead, or the residue of farms Nos. 2 and 3, not included in the homestead. Sec. 3625. (4) A judgment rendered by a court of competent jurisdiction, as was and is the probate court judgment in originally assigning the homestead years ago to the widow and minor children, is not subject to a collateral attack. Brandon v. Carter, 119 Mo. 572; Camden v. Plain, 91 Mo. 117; Rosenheim v. Hartsock, 90 Mo. 357; Holt County v. Cannon, 114 Mo. 514; Sherwood v. Baker, 105 Mo. 472. (5) Under the facts and law farms Nos. 2 and 3 are not subject to partition in this action. The homestead is still in existence, a vested estate during the minority of the owners of the homestead, and this action for partition of the homestead is premature and cannot be maintained.

LAMM, J.—W. P. Brewington died intestate seized of certain real estate in Madison county, Missouri, leaving a widow and two sets of heirs, some of them children by an earlier and some by a later mar-

riage—some adults, others minors. The lands of decedent were in three separate and detached tracts, designated in the record as "Farm No. 1," "Farm No. 2," and "Farm No. 3," and here (for convenience) called A, B and C, respectively.

In the latter part of 1895, on due proceedings in the probate court of Madison county, there was valued, severed and set out to the said widow and minor children, a homestead carved out of B and C, leaving remnants of both B and C in the corpus of the general estate. The widow died. Subsequently, in 1903, the adult heirs of W. P. Brewington brought suit against the minor heirs seeking a partition and sale of tracts A, B and C, including the homestead. As presently seen, the court refused to partition the homestead of 160 acres. Thereat plaintiffs appeal.

Referring to said remnants, partition was also refused, as presently seen, because all parties agreed that such remnants (taken as detached from the homestead) were valueless for the purposes of partition and ought not to be partitioned at this time, unless the homestead was also partitioned.

For our purposes, it will do to say that, among other allegations, the petition pleads the homestead proceedings in the probate court with a description of the lands included therein, continuing as follows:

"Plaintiffs further state that the dwelling house, out buildings and the land in connection therewith as above set out to the widow and minor children of W. P. Brewington, deceased, exceed the sum of fifteen hundred dollars in value as mentioned in section 3616 of the Revised Statutes of 1899 of Missouri, and a severance of such homestead for the minor children, the widow being dead, would greatly depreciate the value of the residue of the premises from which said homestead is set off and be of great inconvenience to the parties interested in the homestead and the residue

of said premises and render the residue of said premises, if partitioned and sold without the homestead, valueless.''

In substance, so far as material, defendants answered denying the right to partition the homestead until the minor defendants all attained their majority. These answers impliedly admit an increase in the value of the homestead since it was severed and set out, but allege it contained only 160 acres and did not exceed $1,500 in value at that time.

In the judgment, *nisi*, the homestead proceedings are set forth with a description of the homestead in metes and bounds. A partition of tract A is then adjudged and it is ordered sold. As to the homestead and the remnants of B and C, the judgment runs as follows:

''The court further finds and decrees that the foregoing described homestead so set out to the widow and minor children is not subject to partition in this action, and the court further finds that the remaining portion of farms Nos. 2 and 3 not embraced in the aforesaid described homestead cannot be divided in kind or sold without great prejudice to the interests of the heirs of said W. P. Brewington, and it is conceded and admitted by the plaintiffs and defendants that a sale or division of said remaining portion of farms Nos. 2 and 3 would be detrimental and prejudicial to the interests of said heirs and recommend that said partition be not made.''

At the trial evidence went in from plaintiffs tending to show that W. P. Brewington died seized of tracts A, B and C. That each was a farm separate and apart from the other. That the homestead was carved from tracts B and C, leaving out a parcel of each. That the severance of these parcels from the homestead would greatly depreciate them, and be of such inconvenience to the parties in interest as to ren-

der them valueless. Plaintiffs also introduced evidence tending to show that the homestead cannot be occupied in severalty without great inconvenience to the parties interested in such homestead and in such residue. That the homestead when set off was worth $2,000 and is now worth $3,000. That the minor defendants are two boys aged respectively twenty and nineteen years and two girls aged respectively seventeen and fifteen; and that neither tract A, B or C was susceptible of division in kind equitably.

The bill of exceptions shows further, as follows:

"The defendants to sustain the issues on their part offered evidence tending to show that the homestead as set off was worth but $1,500 at the time and is now worth about $2,500, also the ages of minors as stated, and other evidence as to ownership and interest was the same as plaintiffs' and that the homestead could not be set out and the remainder of the farm sold without great prejudice to all parties in interest."

It is asserted in respondents' brief, and not denied in appellants', that the judgment of partition, as to tract A, has been fully executed—i. e., the land has been sold, a deed made and the proceeds divided as directed by the court in its findings. No complaint, here, is made of the refusal to partition the remnants of tracts B and C. *Contra*, the case proceeds on appeal on the assumption that the heirs are in accord in not wanting these remnants partitioned until such time as the homestead be also partitioned. Indeed, as pointed out, so much of the judgment as refused partition of these remnants was entered by consent, provided the refusal to partition the homestead itself was right.

It appears, then, that the sole question presented here is the right to partition a homestead, once severed and set out by proper proceedings in a court of com-

petent jurisdiction to a widow and minor children, on the death of the widow, but before the minors attain their majority.

On the foregoing record, can the judgment stand? We think so; because:

I. The nature of a homestead right during the life of the head of a family owning the fee has been troublesome to define with precision, and appellate courts in Missouri, recognizing it as an anxious matter, have been chary and cautious in undertaking to define it. Hence, what has been said in that way may lack a tone of certainty and finality. The logic of the latest utterance may be said to be that the homestead interest (whatever it is) in a live debtor is not such an estate, as, when put in jeopardy by the levy of an execution, the title to real estate is involved. It has, accordingly, been held that an appeal here does not lie (*i. e.,* that this court has no jurisdiction in an appeal) from an order sustaining or overruling a motion to quash the levy of an .execution upon a homestead because of its being exempt. [Snodgrass v. Copple, 203 Mo. 480.]

I take it the homestead right during the lifetime of the owner of the fee may, by way of analogy, at least, be defined as a privilege, an exemption from levy and sale under execution. That right arises under the peculiar wording of sections 3616 and 3617, Revised Statutes 1899; but, when we come to section 3620 in the Homestead Act, the lawmaker used language importing quite another thing and courts have uniformly put a different construction on the character and quality of a homestead estate descending to the widow and minor children on the death of the owner. Attending to section 3620, it enacts that if the housekeeper or head of a family die, leaving a widow or any minor children, his homestead "shall *pass to and vest in* such widow or children, or if there

be both, to such widow and children, and shall continue
for their benefit . . ., until the youngest child shall at-
tain its legal majority, and until the death of such
widow; that is to say, the children shall have the joint
right of occupation with the widow until they shall
arrive respectively at their majority; and the widow
shall have the right to occupy such homestead during
her life or widowhood, and upon her death or remar-
riage it shall pass to the heirs of the husband; and the
probate court having jurisdiction of the estate of the
deceased housekeeper, or head of a family, shall, when
necessary, appoint three commissioners to set out such
homestead to the person or persons entitled thereto.''

In construing that section, it has been uniformly
and consistently held that the homestead right therein
directed to pass and vest is not a mere privilege or
exemption. To the contrary, the language employed
clearly imports something more than a privilege or
exemption, apt words are used importing an *estate,*
viz.: that a life estate (determinable, as the statute
now stands, on the remarriage of the widow) vests,
*eo instanti,* by virtue of that section on the death of
the head of a family, in his widow; and an estate for
years (determinable as to each minor when he reached
his legal majority) vests in his minor children.
[Elstroth v. Young, 83 Mo. App. l. c. 258; Hufschmidt
v. Gross, 112 Mo. l. c. 659, *et seq.;* Wilson v. Johnson,
160 Mo. l. c. 515; West v. McMullen, 112 Mo. l. c. 411,
and cases cited.] So much must be held settled law.

In further developing the idea in mind, we may
profitably attend to Macke v. Byrd, 131 Mo. 682. That
case holds that in Missouri a homestead during the
life of the head of the family may be moved about.
It was said it could not be fastened to one spot by a
judgment lien, which would be the consequence of per-
mitting it to be sold on execution, subject to the home-
stead right. A homestead had been appraised and set

out under prior executions in favor of one Houck, and thereafter it was sought to subject the homestead to a sale under Macke's execution. In such condition of things this court held that the homestead, fixed and defined by the appraisers, the sheriff and the court under the Houck execution, held good "until some creditor should by proper steps attack the former allotment of the homestead as to quantity or value." It was pointed out that this might be done under certain sections of the statute, but, until that course was taken by some one, the debtor was entitled to the full enjoyment of all his rights in and to the homestead property, including the power of disposal, of which he had taken advantage. But, before concluding the case, pains were taken to hint at the distinction between the homestead right in a live execution debtor and the homestead estate vesting in a widow and minor children at the housekeeper's death. To that end, BARCLAY, J., speaking to the point, said: "The Missouri law on this subject is, unfortunately, not a model of clearness of purpose in some of its features, though its general design is plain enough. It prescribes rules of conduct some of which are applicable to the homestead owner and to his obligations and rights, during his lifetime, and others of which govern the rights of his widow and children, in or to the homestead, after his death. It is scarcely necessary to say (though we do so out of abundant caution) that our comments are intended to apply only to a case involving the interests and rights of the homesteader, his vendees and his judgment creditors, but not of his widow or children, after his death. The case in hand does not involve an inquiry into the nature of the estate of the widow or children of the homesteader, and our rulings should be understood as applying strictly to the facts now in judgment."

The Macke case, then, but sharply points the dis-

tinction heretofore discussed between a homestead right in a live execution debtor, and a homestead estate cast by his death on his widow and infant heirs.

To sum up: On this branch of the case our conclusion is that, as near as language can interpret the intention in the legislative mind, it was to provide the shelter of a privilege or right of exemption in the housekeeper from execution levy and sale of his homestead right—this during his life. Our conclusion is further that, if he dies, section 3620 of the Homestead Act is operative to create, pass to and vest in his widow and minor children an estate for life and years respectively, and this (necessarily) with the incidents of such estates.

II. Assuming the conclusion reached in paragraph I to be sound law, then, as pointed out in the Macke case, *supra,* the incidents of the homestead right during the life of the housekeeper, or head of a family, and the incidents of the life estate and estate for years, vested in the widow and minor children on his death, might naturally be expected to differ in essential features.

Accordingly, in Beckner v. Rule, 91 Mo. 62, it was held that during the life of a debtor he takes and holds his homestead subject to fluctuations in value. That is, when it has been once appraised and set out to him on levy of an execution if it afterwards grow in value, the excess may be subjected by a new appraisement to execution levy and sale. On the other hand, if it depreciate in value he may add to it and claim a revaluation himself. Obviously, the holding in the Beckner case was not directed to the character of estate vested in a widow and minor children on the death of the head of a family. It, on principle, would not apply to a homestead so *vested* on the death of its owner. As long as the homestead was a mere immunity, a privilege or right of exemption from seizure

and sale under execution, it might well be allowed elasticity—the quality of shrinking or swelling with the efflux of time to be adjusted as occasion demanded —although the Missouri doctrine on that score has been questioned and not followed elsewhere by some courts of last resort. [Gowdy v. Johnson, 104 Ky. 648; Gully v. Cole, 96 N. C. 447; Hardy v. Lane, 6 Lea (Tenn.) 379; McCaskill v. McKinnon, 125 N. C. 179.]

The general rule seems to be that a revaluation and a new setting off of a homestead, even to the execution debtor in his life time, will not be allowed in the absence of a plain statutory provision to that effect. [15 Am. and Eng. Ency. Law (2 Ed.), 607.] The cases cited from Kentucky, Tennessee and North Carolina recognize there might be a revaluation of a homestead right claimed by an execution debtor where the original valuation was the result of a fraud, or where some extraordinary incidents had intervened loudly appealing to equitable doctrines. The Missouri doctrine announced in the Beckner case may be referred somewhat to statutory provisions presently to be considered and which, as presently seen, relate (not so much to an interest in lands arising to the dignity of an estate vested in a widow and minor children, but chiefly) to the mere right or privilege of exemption from execution levy and sale. There is a case in California [In the matter of the Estate of Matthew Delaney, 37 Cal. 176], taking color from peculiar statutory provisions under exposition and singular to that State, which holds that after the death of the housekeeper the homestead estate is subject to revaluation as of course; but that case, because of peculiar statutory provisions expounded, is not instructive on the question made in the case at bar.

Certainly it could not with propriety be held that a vested life estate or a vested estate for years was

ordinarily held subject to the incidents of shrinking or swelling from time to time as the case might be. When an estate is vested for life or years it is *fixed* for the prescribed term. Its owners are *seized* for that term. [Black's L. Dict., *tit.* "Vest."]

Now, a proceeding in a court of competent jurisdiction under the statute to have a homestead estate appraised and set out to a widow and minor children is in the nature of a proceeding *in rem*—it binds the whole world and affects permanently the status of the estate.

It could not be denied that if such estate could be recarved and sliced up from year to year as it increased in value, then, by the same token, it could be enlarged from year to year by adding to it other parcels of the general estate in case its value decreases. [Kenley v. Bryan, 110 Ill. 652.] Such a condition of things would breed uncertainty, instability and consequent confusion. In the nature of things it could not but injuriously affect those very persons the law holds in tender regard because of their inability to protect themselves, to-wit, the widow and the fatherless; and, therefore, it seems sensible to conclude, as we do conclude, that, in the absence of fraud in the proceeding (as here) or in the absence of a plain statutory provision allowing a revaluation, questions of value and extent of land are settled once for all when their homestead is regularly set out and adjudged.

This conclusion is fortified by the proposition that homestead laws are not in derogation of the common law and are, therefore, not to be strictly construed. In Blandy v. Asher, 72 Mo. l. c. 28, the doctrine of Thompson on Homesteads, sections 1, 2, 3 and 4, in that behalf was approved. "Homestead laws," says SHERWOOD, J., in the Blandy case, "being of a liberal and beneficent nature, being designed to prevent pauperism and vagrancy and their consequent temptations to

crime, should not be dwarfed, and their evident purpose thwarted by a narrow and illiberal construction."

In this connection, HAZELRIGG, J., in Gowdy v. Johnson, *supra*, well said, *arguendo*: "The bad effect on the homesteader of rendering his habitation unstable, and increasing his anxiety for the continued shelter of his family, is not to be overlooked. While it is said that the State by such statutes is conferring merely a favor or privilege on the debtor, it is to be remembered that the State gets value received. It comes to be supported in time by a citizenship interested in the State and tied to her soil, of independent home-owners, and not of transient and uncertain tenants. It was aptly said by Mr. Benton in the Senate of the United States that 'tenantry is unfavorable to freedom. It lays the foundation for separate orders in society, annihilates the love of country, and weakens the spirit of independence. The tenant has in fact no country, no hearth, no domestic altar, no household god. The freeholder, on the contrary, is the natural supporter of a free government; and it should be the policy of republics to multiply their freeholders, as it is the policy of monarchies to multiply their tenants.' As already stated, we have heretofore decided, in effect, that once a homesteader always a homesteader. And we think [it] is equally clear within certain limitations as to occupancy and possible exceptions to be noticed, once a homestead always a homestead."

The foregoing forensic eloquence is replete with wisdom and patriotism. No good reason can be seen why it does not point a public policy to be subserved by courts in the administration of justice. In the Kentucky case it was applied to the mere homestead interest of an execution debtor. Possibly, it could not be so applied in Missouri, but that is no reason why it does not closely fit and apply to the estate for years and for life vested by our statutes in his minor children

and widow when the guiding and steadying hand of the head of the family is paralyzed by death.

III. Are there any statutory provisions which command the revaluation and readmeasurement of a homestead and permit its partition when once set out? The learned counsel for appellant puts his finger on section 3625, Revised Statutes 1899, and argues that we should construe that section to mean that a homestead once set out to the widow and minor children in a court of competent jurisdiction should be revalued and, if found to be increased in value, then it should be partitioned if it cannot be occupied in severalty without great inconvenience to the parties interested in such homestead or in such residue. There being testimony in the case that the homestead, presumably by the natural rise in the value of land, has become worth between $2,500 and $3,000 and there being evidence that the remnants of tracts B and C are of little or no value separate from the homestead, it is argued that the conditions referred to in that section exist, *ergo*, the homestead should be reduced, commuted into cash and partition go for the whole of tracts B and C including the homestead itself. But we cannot allow the argument of counsel as sound; because section 3625 has been brought down as a live law from the first Homestead Act. It reads now as it did when it was section 10 of chapter 111 in the General Statutes of 1865, p. 451. It refers now to section 3616, the first section of the present Homestead Act, as it referred then to section 1, the first section of the original Homestead Act. Under section 5 of the original act (now, as amended, section 3620 and hereinbefore under exposition) the widow and minor children were vested with an estate. The original act having been borrowed from Vermont, it was held in Skouten v. Wood, 57 Mo. 380, that we borrowed the law together with the construction theretofore put upon it by the Vermont

courts, and, therefore, the widow took an absolute title in fee, subject to the interest of the children until they attain their majority, as held by said Vermont courts. If, now, section 10 of the old act be construed in connection with section 5, which gave the widow title in fee, we would, under counsel's theory, have the absurd result of a title in fee once vested in the widow by a valuation and admeasurement of the homestead, divested out of her by piecemeal as the land grew in value—a theory that would destroy or impair her right of alienation. Such an irrational result never could have been in the contemplation of the Legislature—stability, fixity and alienability being of the essence of estates in fee. To the contrary, section 10 of the old act, now section 3625, Revised Statutes 1899, contemplates one of two things, viz.: either a condition of things pertaining to the homestead right of an execution debtor, or to a homestead right of a widow and minor children which, because of given conditions, cannot be valued, severed and set out to them. It cannot be said to relate to the estate of the widow and minor children *after* the homestead has once been valued, severed and set out to them. If, as between the debtor and creditor the homestead cannot be severed without great prejudice to all concerned, or if the homestead estate of the widow and minor children cannot be severed and set out without such inconvenience and loss, that statute may have some bearing and be called into play.

It results that section 3625 does not give the remedy sought by plaintiffs in this case.

Counsel argue that Beckner v. McLinn, 107 Mo. 277, is authority for his position, but that case is not on all-fours with this. That case passed off on three propositions: First, one relating to the sufficiency of an order of publication; next, one relating to the general doctrine of *res adjudicata;* and, next, one re-

lating to the right of the heirs to partition the estate when the homestead is part of an estate held in common. That a homestead may be set out by a partition proceeding, no one questions; but in this case the homestead has been set out and the question is whether, having been set out, it may be partitioned among the heirs prior to the youngest attaining its majority?

That a homestead, as such, is not subject to partition results from the inherent character of the estate and the purpose it subserves under the policy of our laws. [Rhorer v. Brockhage, 86 Mo. 544; Simpson v. Scroggins, 182 Mo. l. c. 571; id., p. 574; Quail v. Lomas, 200 Mo. l. c. 687.]

The homestead having been once duly valued and admeasured by proceedings in a court of competent jurisdiction, is not subject to a new adjustment under the pleadings and proof in the case at bar, nor is it subject to partition during the minority of any of W. P. Brewington's children. Therefore, the judgment must be affirmed. It is so ordered.

All concur.