## Farmers & Traders Bank v. Childers, et al.

(Decided November 22, 1912.)

### Appeal from Wolfe Circuit Court.

1.   Homestead—Abandonment.—In an action involving the question of abandonment of a homestead, evidence examined and held

to sustain the finding of the chancellor that the homestead was not abandoned.

2. Homestead—Exemption—Proceeds of Sale—Reinvestment—Time. —A person who owns a homestead may sell the same and within a reasonable time reinvest the proceeds in another homestead, which will be exempt to the same extent from forced sale for debts as was the homestead which was sold, and where the sale of the former homestead is made in the fall of one year, and the new homestead is purchased and occupied in the spring of the following year, the time is reasonable.

S. G. SAMPLE for appellant.

JOHN M. TESTER, J. B. WHITE and KASH & KASH for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Jerry Childers and Martha E. Childers were married on October 25, 1902. At that time he was living in Wolfe County on what is known as the Camp Rose place. They continued to live there until February, 1903. They then moved to the Stillwater farm, which was owned by Jerry Childers. There they kept house for about ten months, and in January, 1904, moved to Campton, the county seat of Wolfe County. The Stillwater farm was worth less than $1,000. In the year 1906, Jerry Childers and wife sold the Stillwater farm. The money was deposited in the bank to the credit of Martha E. Childers. On April 9, 1907, they purchased a home in Campton. Of the consideration, $600 was a part of the proceeds of the Stillwater farm, and $255 was furnished by Martha Childers out of her individual funds. At the time of the institution of this action they were living in the Campton home.

On the 27th day of July, 1905, the Farmers and Traders Bank, by mistake, placed $100 to the credit of Jerry Childers. The bank afterwards brought suit against Jerry Childers and recovered judgment for $100, with six per cent interest from July 27, 1905, subject to a credit of $12.44, paid May 15, 1906, and for its costs, amounting to $12.05.

This action was brought by the Farmers and Traders Bank against Jerry Childers and Martha E. Childers to subject the Campton home place to the payment of its debt, it being charged that the purchase price was paid by Jerry Childers, and that the property was conveyed

to and held by Martha E. Childers for the fraudulent purpose of defeating Jerry Childers' creditors, including the plaintiff bank. Defendants pleaded a homestead in the Stillwater farm, that they abandoned the farm for temporary purposes only, and with a fixed intention to return thereto and occupy the homestead, and that the Campton place was purchased in the manner above set out. On final hearing, the chancellor adjudged that defendants had never abandoned the Stillwater farm, and as the Campton place was purchased with the proceeds of the sale of that farm, and with other money furnished by Martha E. Childers, it was not subject to the bank's debt. From that judgment the bank appeals.

In addition to the above facts, it appears that Jerry Childers and his wife moved to Campton in order for him to obtain a position as the inspector for the railroad. When he moved, he stated to his son and son-in-law that he intended to return and occupy the farm as soon as he ceased working for the railroad. To that end he rented the land on shares from year to year, and would not give a longer lease because of his purpose to return and occupy the farm.

On the other hand the evidence for the bank is to the effect that after moving to Campton, Jerry Childers began voting there and continued to vote there for several years. They left no furniture at the farm and reserved no room there. Soon after reaching Campton they began to try to sell the Stillwater farm. Jerry Childers and his wife, Martha, had no children, but Jerry Childers' children by a former wife were grown and did not live with them. The debt to the bank was created after they moved into Campton.

We have frequently held that the fact that a man votes in a precinct different from that in which his homestead is located is not conclusive evidence of the abandonment of his homestead, but is merely a circumstance to be considered in connection with the other proof in determining the question of abandonment. Campbell, &c. v. Potter, 16 R., 535, 29 S. W., 139; Cincinnati Leaf Tobacco Warehouse Co. v. Thompson, 105 Ky., 627, 20 R., 1439, 49 S. W., 446. The rule that where the indebtedness is incurred after the homestead is abondoned, stronger evidence is required of the fact that abandonment is for temporary purposes only, and that the debtor has a fixed intention to return to the homestead, does not

apply in this case. Here no credit was extended Jerry Childers, much less any credit on the faith of the homestead. The money was not loaned to him, but simply placed to his credit by mistake.

The homestead was only a few miles from Campton and in the same county. The defendants did not move to another city and engage in business. They did not buy a home in Campton until they purchased the lot in question with the proceeds of the sale of the former homestead. Until they did make the sale they rented the home. Jerry Childers repeatedly declared his purpose to return to the homestead. He did not give a long lease on the Stillwater farm, but rented it to his sons on the shares from year to year, giving as a reason that he was expecting to return and occupy the place at any time. While it is true that a debtor's intention must be gathered not only from his declarations made at the time, but from his subsequent conduct, we cannot say that the subsequent conduct of Jerry Childers in voting in Campton and in failing to return to the homestead, is sufficient to overcome his declared intention to return and occupy the homestead, which in the meantime was sold. Upon the facts, therefore, we see no reason to disturb the finding of the chancellor.

The law is well settled that the person who owns a homestead may sell it and reinvest the proceeds in another homestead, and the homestead thus purchased will be exempt to the same extent from coercive sale for the payment of debts as was the homestead that was sold; the purchase of the new homestead being regarded as merely the continuance of the old homestead, and not the formation of a new homestead. This rule, however, is subject to the exception that the debtor, to preserve his right to a homestead in the new tract of land, should purchase and occupy his homestead within a reasonable time after selling the first homestead. Lee & Hester v. Hughes, 77 S. W., 386, 25 R., 1201; Green & Son v. Pennington, 123 Ky., 837, 97 S. W. 766; Collins v. Collins, 99 S. W., 653, 30 R., 816; Baker v. Kash 113 S. W., 820. Here it appears that the old homestead was sold in the fall of 1906. The new homestead was purchased in the spring of 1907. The defendants then took possession and occupied it as a homestead. The time between the sale of the first homestead and the purchase and occupancy of the new homestead was not, therefore, unreasonable.

Judgment affirmed.