## Ash's Administrator v. Ash.

(Decided February 12, 1914.)

### Appeal from Jefferson Circuit Court (Chancery Branch, First Division).

Judgment—Judgment of Chancellor.—Where the evidence relating to disputed questions of fact is conflicting, the judgment of the chancellor will not be disturbed.

ELMER C. UNDERWOOD for appellants.

THUM & ROY for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

George W. Ash died in August, 1907, leaving surviving him as his widow the appellee, Ida Ash, and nine children by former wives. Joseph H. Funk, who married one of the daughters of George W. Ash, at the request of the widow, qualified as administrator of the estate. The decedent left personal estate of the value of $2,700 and two tracts of land encumbered by lien notes to the amount of several hundred dollars. The widow was entitled, under the statute of descent and distribution, to have set apart to her $750 as her distributable share of his personal estate, but in September, 1907, the widow and the administrator and some of the children had a conference in which it was agreed that the widow would accept less than her distributable share of the

personal estate and permit it all to be sold except a few articles of little value, and let the proceeds be applied to the payment of the debts of the intestate.

To evidence this agreement a writing was executed by the widow and the administrator setting out in substance that the widow should have the articles of personal property mentioned in the writing, $25.00 to be paid to her in October, 1907, and $300.00 to be paid before October, 1908. This writing further set out that the personal property, except the articles mentioned in the agreement, should be sold and the proceeds first applied to the payment of funeral expenses, doctor's bills and a few other debts and expenses mentioned in the agreement.

After this writing was executed, the administrator took it to his attorney, who concluded that it was not full or specific enough, and thereupon the attorney wrote out an agreement providing that the personal estate of the decedent should be sold and the proceeds of the sale first applied to the payment of the debts and expenses mentioned in the first agreement. But this last agreement contained the further stipulation that the proceeds of the personal property, in addition to being applied to the payment of the debts and expenses mentioned, should be also applied "to the payment of any other debts that may be proven against said estate, and the party of the second part, Mrs. Ash, after the payment of the foregoing items, is to receive out of the remainder of the proceeds of the sale the sum of $325 in full settlement of her dower right, exemptions and all other claims against the personal estate of George W. Ash."

The substantial difference between these two papers was, that under the first one the widow would certainly receive $325.00 in money, while under the last one she might or might not receive that much, depending on the amount of the debts presented against the estate.

After this the widow was paid the $25.00 mentioned in the first agreement, and when the estate was settled up and all of the debts paid, the administrator tendered to her $10.49, which was all that was left of the proceeds of the personal estate after the payment of the debts. The widow declined to accept this $10.49 and brought suit to recover from the administrator the full amount of her distributable share, $750.00.

The administrator, for defense to this suit, set up the second agreement signed by the widow, and asserted that under this agreement she was entitled only to the amount of $35.49, which had been paid or tendered to her.

In the preparation of the case much evidence was taken by both parties, and many charges of fraud and bad faith were made on both sides. When the case was finally prepared for trial it was submitted to the chancellor, and he gave judgment in favor of the widow for $325.00, to be credited by $25.00 that had been paid to her.

From this judgment the administrator and the children appeal. They ask a reversal upon the ground that the widow, by the second writing, which it is admitted she signed, agreed that the personal estate should be applied first to the payment of all the debts of the intestate and expenses of administration before she received anything on account of her distributable share; and it is insisted that the evidence relied on by the widow to show that this agreement was obtained by fraud and overreaching was not sufficient to justify the chancellor in setting it aside. Assuming this to be so, the argument is made that the widow should have been compelled to accept in full satisfaction of the balance due the $10.49 tendered to her by the administrator.

The questions involved in this case are purely ones of fact, and it would serve no good purpose to relate the evidence showing the charges of fraud and forgery and bad faith so freely asserted by the witnesses for both parties. The truth is that there is no substantial evidence in the record showing fraud or forgery or bad faith on the part of any one.

Except for the agreement entered into by the widow she was entitled to and would have received $750.00, and it appears that she was only induced to accept less than this amount out of a disposition to contribute out of her share to some extent, to save as much of the estate as could be saved for the children after the payment of the debts, and after many appeals in behalf of the infant children had been made to her.

The second paper signed by Mrs. Ash is the one around which all the controversy in this case centers. The administrator and his witnesses undertake to establish that Mrs. Ash understood fully the contents of this paper before she signed it and, therefore, should be

bound by its conditions; while Mrs. Ash and her witnesses showed that she believed the second paper contained substantially the conditions of the first paper only more elaborately stated.

Under the circumstances of this case very little evidence ought to be required to afford the widow the relief given to her by the chancellor, and after reading the record we are of the opinion that his judgment was correct. In arriving at this conclusion we have not been influenced by any charges of fraud or other wrongdoing made against the administrator or any other person, but we rest our judgment upon the ground that the surrender of any part of the share to which she was entitled was a pure gift on the part of the widow, and this being so, she ought to have all except that part that she voluntarily relinquished in the first agreement, which was understandingly signed by her.

The judgment is affirmed.