## Hamer et al. v. McCown et al.

(Decided November 15, 1929.)

HAGER, PRICHARD & MALIN and JOHN T. DIEDERICH for appellants.

DYSARD & MILLER, R. D. DAVIS and EARL STEPHENS for appellees.

Opinion of the Court by Judge Rees—Affirming.

Some time prior to March 2, 1878, Abram Hamer died intestate, the owner of a tract of land in Greenup county containing 103.88 acres. He left surviving him his widow, Julia Hamer, and eight children, all of whom were infants. A judgment for approximately $800 was recovered against the administrator of Abram Hamer on a debt owing by the decedent, and the land was ordered sold to satisfy the lien, the nature of which does not appear. However, the widow and children were parties to the proceeding. Commissioners were appointed to allot a homestead to the widow and infant children and 100 of the 103.88 acres owned by the decedent at the time of his death were set aside as a homestead, and the 3.88 acre tract was sold outright by the master commissioner, and the 100-acre tract was sold subject to the homestead right of the widow and children. At the commissioner's sale H. M. McCown purchased both tracts—the 3.88 acre tract for $25 and the reversionary interest in the tract allotted as a homestead for $200. The sale was confirmed, and on February 28, 1879, the commissioner executed a deed to McCown.

The widow, Julia Hamer, and the children continued to occupy the farm. By 1899 all of the children then living, except Henry Hamer, had left the old home and gone to Ironton, Ohio, to reside. Ironton is just across the Ohio river from the Hamer land. In 1899 the dwelling had become so out of repair as to be an uncomfortable place in which to live, and Julia Hamer went to Ironton, Ohio, and remained there a number of years with her children. She left her son, Henry Hamer, in possession of the farm, and he continued to reside in the dwelling for nine or ten years and to cultivate the land. She visited him from time to time at the old home. About 1909 the dwelling became so dilapidated that Henry Hamer was unable to occupy it as a residence, and he moved into a house that he had erected on a small tract of land located near the homestead tract. He continued to cultivate the latter tract. About 1916 Julia Hamer returned to Kentucky and lived with her son, Henry Hamer, until her death in August, 1925.

H. M. McCown, the purchaser of the land, died in 1913 a resident of Boyd county, which adjoins Greenup county. He devised all of his property to his wife, Elizabeth McCown, who died in 1922 a resident of Boyd county.

After the death of Julia Hamer, the heirs at law of Elizabeth McCown, who are the appellees here, brought this suit in ejectment against the children of Abram Hamer.

In their answer the defendants alleged that they had acquired title to the land by adverse possession. Upon the trial, however, all of the defendants, except Henry Hamer, disclaimed any interest in the land. He testified that he was 18 years of age in 1879 when the land was sold by the master commissioner and purchased by Mc-Cown subject to the homestead right of the widow and infant children, and that he lived on the farm from the time it was sold until about 1913, when he moved to the house that had been erected on a nearby tract of land owned by him, but that he continued in possession of the homestead; that his mother lived with him on the homestead from 1879 to 1899, when she went to Ironton, and that she returned to Greenup county in 1916 and lived with him until her death in 1925. He stated that during all this period of time he had cultivated the land, repaired the fences, and paid the taxes. The tax records disclosed, however, that he had listed the land as the property of Julia Hamer until her death in 1925 and then in the name of Julia Hamer's heirs. At the conclusion of all the evidence the trial court peremptorily instructed the jury to find for the plaintiffs, and from the judgment entered on the verdict which was accordingly returned the defendants have appealed.

There is no evidence that H. M. McCown, or, after his death, Elizabeth McCown, received any notice that Julia Hamer had abandoned the homestead, and that Henry Hamer was claiming it adversely to the title owners. The mere removal of the widow from the homestead did not terminate her homestead right. We have frequently held that a widow; is not required to live upon the land continuously in order to preserve her homestead right, but that she may hold it by tenant if she intends to return and occupy it at some future time. Evansville Coffin Co. v. Sumner, 189 Ky. 839, 226 S. W. 363. Julia Hamer left the homestead because she had failed to keep the dwelling in repair and had permitted it to become uninhabitable. She left her son in possession, and returned at intervals to stay with him for short periods of time at the old home, and finally returned to remain with him permanently, although he was then living in a house owned by him located near the homestead. He was still cultivating the homestead tract, although he had aban-

doned the dwelling thereon because it had become unhabitable—in fact, had fallen to the ground and been removed. Other buildings on the land were permitted to suffer a similar fate. The failure of Julia Hamer and appellant Henry Hamer to keep the buildings repaired is a circumstance tending to show that they claimed no interest in the land beyond the homestead right of Julia Hamer.

It is obvious that the original holding of Henry Hamer was amicable, and we find nothing in the record tending to show any act of Henry Hamer that would bring home to H. M. McCown or Elizabeth McCown notice of any character of occupancy upon his part save as agent or tenant of his mother under her homestead right. He listed the land for taxes in the name of his mother, whose duty it was during her occupancy to pay the taxes on the property, and none of his acts while in possession of the land is inconsistent with his possession as the tenant of his mother under her homestead right. It is well settled that, where the original holding is amicable, as it was in this case, the possession of the occupant, not having commenced adversely, is presumed to have continued as it commenced, in privity with the owner. The rule as applied to a life tenant or his vendee is thus stated in Bates v. Adams, 182 Ky. 100, 206 S. W. 163, 165:

"It is too well settled to need even a citation of authority that the purchaser from a life tenant, by his use or occupancy of the land or his assertion of claim to, it while holding as life tenant, will not have the effect of converting his amicable use and possession into an adverse holding, or start the statute of limitation that will toll the right of entry in the remainderman, until the grantee of the life tenant had done much more than would be required to establish an adverse holding on the part of a person who did not occupy the relation of life tenant or the attitude of having made an amicable entry upon the land.

"Under ordinary circumstances, an adverse holding may be said to begin when the person in possession exercises the usual acts of ownership over the property and asserts a claim against the world to a well-defined boundary; but, of course, a life tenant or his vendee does not occupy this favorable attitude, and he cannot assert title by adverse holding until he has brought home to the remainderman by clear and convincing evidence notice of his

intention to set up a title in himself as against them to the fee.''

To the same effect are Russell v. Tipton, 193 Ky. 305, 235 S. W. 763; Smith v. Richey, 185 Ky. 516, 215 S. W. 429, and many other cases that might be cited. As said in some of the cases, the possession of an occupant whose original holding was amicable cannot become adverse to the holder of the legal title, unless he brings home to the latter, by clear and convincing evidence, notice of his intention to set up title in himself. There is no showing in this case that such notice was brought home to the owners of the legal title to the land in question. Their title to the 100-acre tract was subject to the right of homestead of Julia Hamer, who died in 1925, and their right of possession did not mature until her death or until she abandoned the homestead.

It is insisted for appellants that Julia Hamer abandoned the homestead in 1899, and that she informed Mrs. McCown more than fifteen years before this action was instituted that she was living in Ironton, Ohio, and her son, Henry, was residing on the Greenup county land, and that this constituted notice to the holders of the legal title of her abandonment of the homestead, and that Henry Hamer was holding the land adversely. Mary Hamer, one of the defendants, was the sole witness on this point. She testified that she accompanied her mother to Ashland, Ky., on the occasion when the alleged conversation between Julia Hamer and Mrs. McCown occurred; she admitted that her mother went to Ashland to consult Mrs. McCown in regard to the homestead tract, and that she was present during the entire conversation. However, her recollection as to what was said by her mother is extremely hazy. She remembered that Julia Hamer told Mrs. McCown she was living in Ironton, and that her son Henry was residing on the land. It is not reasonable to suppose that Julia Hamer and her daughter went from Ironton, Ohio, to Ashland, Ky., for the sole purpose of informing Mrs. McCown that the homestead had been abandoned. It would be more reasonable to believe that the trip was made for the purpose of ascertaining whether or not the reversionary interest could be purchased. At all events, the interpretation placed upon this testimony by appellants is not warranted, in view of the rule that notice to the title holder by one who has been an amicable occupant of property

that he intends to hold adversely must be brought home to the title holder by clear and convincing evidence. The 3.88 acre tract and the 100-acre tract were in one inclosure, and Henry Hamer's use of the two tracts was of the same character. The smaller tract could not be economically utilized apart from the larger tract, and no act of appellants is pointed out which tends to indicate that the nature of the occupancy of the two tracts differed in any respect.

The evidence introduced in behalf of the defendants was not sufficient to authorize a submission of the case to the jury, and the trial court properly directed a verdict for the plaintiffs.

Judgment affirmed.