## Brewer v. Brewer.
(Decided May 4, 1937.)

C. C. BAGBY and BELL & STEVENSON for appellant.

MATHERLY & CURRY for appellee.

OPINION OF THE COURT BY JUDGE BAIRD—Affirming.

The only question on this appeal is, Had appellee, Bessie Newby Brewer, at the time of the filing of this action, and when the execution was levied upon her land, on February 18, 1936, abandoned her homestead?

The right of a claimant on a homestead always turns on the facts of the particular case, when viewed in the light of the controlling principles, which have been adjudged by the court. It is impossible to lay down an absolute or fixed rule as to the amount of evidence necessary to establish a homestead of unoccupied premises by the claimant, that has not been abandoned. Every case must be decided on the evidence adduced and on the intention and purpose of the claimant. Conway v. Reed, 193 Ky. 287, 235 S. W. 747. Stronger evidence will be required to establish the right of homestead in a case where it would be a deception or fraud upon a creditor made during the absence of the actual occupancy of the claimant. Louisville Tobacco Warehouse Co. v. Calvert, 180 Ky. 718, 203 S. W. 567; Farmers' & Traders' Bank v. Childers, 150 Ky. 719, 150 S. W. 840. However, in the instant case, we are not confronted with such a creditor, but the homestead is sought to be subjected to the satisfaction of a judgment for damages for a tort for alienating affections, etc.

In general, the residence of the husband is, in law, presumptively the residence of the wife, and usually when it is made to appear that the husband is the owner of real estate, on which he has a residence, if following the marriage the wife takes up the residence at his home and upon his land, in the absence of evidence tending to show that the moving from claimant's home was only temporary, the law would regard the home of the husband to be the permanent home of the wife. However, the evidence in this case shows that at the time

appellee married her second husband, they lived upon her land as a homestead for as long as a year or more; that when she moved away, it was on account of the condition of her house, which was out of repair; the roof leaked, it needed papering and painting and was in such condition that she and her family could not live in it with any degree of comfort; that she intended all the while to move back to her home when she had money enough to repair it and make it livable.

It must be kept in mind that section 1702, Kentucky Statutes, is unlike the statutes of many states. The exemption given to it is not to the head of the family, nor to the householder, but it is so much of the land, including the dwelling house and appurtenances owned by the debtor, who are actually bona fide housekeepers, with a family, resident in this commonwealth, which shall not exceed in value $1,000. It is true that where the husband is living, he should support his wife and provide a home for her and their family, but they do not always do that.

As was said in Herring v. Johnston, 72 S. W. 793, 794, 24 Ky. Law Rep. 1940, 1941:

"Married women have been given more and more rights over their property, and more power to contract and trade as if single. The design of the Legislature has been to enlarge their opportunities and privileges to the end that their conditions might be improved. * * * When she becomes the debtor, the statute is for her protection, and for the protection of those dependent upon her. Waples, Homestead & Exemptions, 125. The Legislature has expressly recognized that the married woman may own a 'homestead' in her own right by section 1708 of the Kentucky Statutes, providing that 'the homestead of a woman shall, in like manner, be for the use of her surviving husband and her children,' etc. Hemphill v. Haas, etc., 88 Ky. 492, 11 S. W. 510; Ellis v. Davis, 90 Ky. 183, 14 S. W. 74."

Therefore, under section 1702 of the Statute, appellee is entitled to her homestead exemption, unless she had abandoned it. The question of abandonment is based upon the facts developed in the case.

There is a difference between a homestead claimed

under section 1702 and section 1707. The homestead exemption to the widow under section 1707 is entirely derivative, and it is for the benefit of herself and infant unmarried children. It accrues to her because of the homestead of her deceased husband at his death in the land. The homestead exemption of appellee based on section 1702 is hers by matter of right. She owned the land herself and occupied, claimed, and used it together with her family at the time of the levy of the execution, and of the institution of the action in the instant case. The homestead exemption claimed by appellee can be lost only by abandonment, but afterwards may be under certain circumstances reclaimed, while that claimed by section 1707 may be lost by abandonment or by sale with no right of reclamation.

The fact that appellee married the second time does not deprive her of her homestead, nor is she compelled to remain upon the premises herself all of the time, to be entitled to the homestead. Hamer v. McCown, 231 Ky. 522, 21 S. W. (2d) 833. ''An actual removal to and location in another place with no intention of returning constitutes an abandonment [of the homestead].'' American National Bank v. Mathews (Ky.) 124 S. W. 811, 812; Mattingly v. Berry, 94 Ky. 544, 23 S. W. 215. And again, if she is absent therefrom temporarily, with a fixed and ever-present intention to return and occupy such property, the homestead is not abandoned. Conway v. Reed, supra; Elliott v. Argenbright, 221 Ky. 763, 299 S. W. 957; Tyler's Ex'r v. Williamson, 237 Ky. 579, 36 S. W. (2d) 34; Williams v. Evans' Adm'r, 247 Ky. 105, 56 S. W. (2d) 710, 712.

We find little conflict in the testimony presented by the parties. Appellee states, in substance, that it was her intention from the time she moved from her home to the time she testified to hold the land in question as her homestead; that it had been her intention all of the while to move to it as soon as it was properly repaired. There is evidence that she had spent very little on the premises since she left it, toward repairing it, but she gave as her reason that her tobacco burned; that she needed money to pay taxes and interest on the mortgage debt on the land, which amounted to $800 or more. It is also shown further that about all of the time since she moved to the home of her present husband, her home has been occupied by tenants. It does

not require strong evidence to sustain appellee's contention that it was her purpose to retain her homestead.

As we said in the case of Williams v. Evans' Adm'r, supra, and also in the case of Covington Brothers & Co. v. Byrns, 230 Ky. 66, 18 S.W. (2d) 870: "The statute [Ky. Stats. sec. 1702] should be liberally construed and enforced."

The object and purpose of the statute was intended to afford a home for the person for whom the right was created; therefore, we think that the court should be rather liberal in passing upon facts where the homestead is involved.

Appellee, in substance, states that her absence was at all times temporary, and that she had a fixed and ever-present intention to return and occupy the property as soon as she succeeded in getting it in condition. There is evidence that some articles of furniture were left, such as an ice box, bed, stove, and other articles at the place when she left it. There is proof that she informed her tenants that she intended to move back to the premises and that she wanted possession as soon as she could get it; that she voted at the place in which her home was situated; that her infant son attended school in that district during her absence from it; that her husband owed on his farm of sixty-seven acres as much as $2,500 or more, secured by a lien; that he owned a life estate only in the home that they now occupy in Harrodsburg, Ky.; that her land had come to her through inheritance from her father and her purpose was to keep it as a home for herself and family the remainder of her life.

Considering, therefore, the evidence, in the light of the law, as heretofore stated, it is our opinion that appellee has not abandoned her homestead or the property in controversy.

It is a rule of this court that where the evidence to the disputed question of fact is conflicting, the judgment of the chancellor will not be disturbed. The chancellor knew the witnesses, observed their deportment, and for that reason is better able to pass upon the effectivenss of the testimony than this court. Ash's Adm'r v. Ash, 157 Ky. 421, 163 S. W. 218; Gray et al. v. Grimm, 157 Ky. 603, 163 S. W. 762; Coburn et al. v. Coburn et al.,

157 Ky. 849, 164 S. W. 105; McAuliffe et al. v. Helm et al., 157 Ky. 626, 163 S. W. 1091; Gragg v. Barton's Adm'x, 161 Ky. 210, 170 S. W. 621.

Viewing the evidence as a whole, we have concluded that the lower court committed no error in its judgment.

Judgment affirmed.