CASE 4—PETITION EQUITY—JUNE 21.

## Carter, Fisher & Co., &c. v. Goodman, &c.

APPEAL FROM BARREN CIRCUIT COURT.

1. THE RIGHT TO A HOMESTEAD EXEMPTION DEPENDS upon the present and actual purpose and intention of the debtor to use and enjoy the property sought to be exempted as a home for himself and family, and that right does not exist where the residence of the debtor and his family is permanently located elsewhere. (Brown Bro. & Co. v. Martin & Co., 4 Bush, 50.)

2. *Where a debtor removes from his residence,* with the view of permanently locating elsewhere, his right to the exemption in the land he left ceases with his removal, although he may still own and cultivate it and have a tenant thereon; and the right is not re-established by his intention to return, but relates only from the time he actually makes it the residence of himself and his family.

3. *Where a debtor returns with his family to his former residence* after executions against him have been placed in the officer's hands, but

before levy, the liens in favor of the execution creditors on the property can not be overreached or defeated by his claim to a homestead.

*The liens acquired by the levies related back* to the dates when the executions came to the hands of the officer.

4. REPLY NOT NECESSARY—FRAUDULENT CONVEYANCE OF LAND AL-LEGED IN THE ANSWER.—This suit was brought to enjoin a sale of land under execution, on the ground that the plaintiff, before the issuing of the execution, had become the purchaser of the land, and that it had been conveyed to him by deed duly recorded. The answer admitted these facts, but by way of avoidance charged that the conveyance was made without consideration, and with the in-tent to defraud the creditors of the vendor, and, without expressly making it a cross-petition or counter-claim, prayed that the deed be annulled and the land sold to satisfy the debt. *Held,* that the validity of the deed was placed in direct issue, and no reply was required, it devolving on the defendant to show that the deed was fraudulent.

N. A. SMITH,   ·⎫
W. L. PORTER, ⎬ · · · · · · · · · · For Appellants,

CITED

General Statutes, page 433.
Civil Code, sections 153, 154.
MS. Opinion, Jan., 1856, Branham v. Perkins.
MS. Opinion, 1858, Oldham v. Brown.
4 Bush, 47, Brown Bro. & Co. v. Martin & Co.
9 Kansas, 466, Monroe v. May.
4 Met. 113, Hutchings v. Moore.
4 Met. 58, True, &c. v. Triplett.
2 Met. 340, Slone v. Slone.
4 Met. 312, Stern v. Freeman.
16 B. Mon. 414, Ridgeley v. Rice.

LEWIS, BOWLES & McQUOWN, · · · · · For Appellees.

JUDGE COFER DELIVERED THE OPINION OF THE COURT.

The appellants, Carter, Fisher & Co. and J. B. Wilder & Co., having judgments against the appellee J. T. Goodman, caused executions of *fieri facias* to issue thereon, and placed them in the hands of the sheriff of Barren County for collec-

tion. The execution in favor of Carter, Fisher & Co. came to the hands of the sheriff January 21, 1873, and that in favor of J. B. Wilder & Co. February 11th of the same year, and both were levied February 28th, on one hundred and eleven acres of land as the property of J. T. Goodman.

J. T. & W. J. Goodman brought this suit to enjoin the appellants from causing the land to be sold under the executions.

They alleged in substance that before the executions issued J. T. Goodman had sold and conveyed fifty-six acres of the tract to W. J. Goodman, and that the deed had been recorded; that the debts for which the executions issued were created after June 1, 1866, when the act known as the "homestead law" went into effect, and that J. T. Goodman was a *bona fide* housekeeper with a family, and resided on the residue of the tract not sold and conveyed to W. J. Goodman, that said residue was not worth more than one thousand dollars, and had not been purchased or improved since the creation of the appellants' debts, and was therefore exempt under the homestead law from sale under execution; and they prayed for an injunction enjoining its sale.

The appellants answered, charging that the conveyance of the fifty-six acres to W. J. Goodman was made without consideration, and with the intention to hinder and delay the creditors of J. T. Goodman, and praying that the deed might be held for naught and the land sold to satisfy their judgments.

They denied that J. T. Goodman was entitled to a homestead in the residue of the tract, and alleged that he did not reside on the land at the time the executions issued or were levied, but that he was at those times residing several miles from the land, and had been for more than two years.

The evidence shows that J. T. Goodman had resided on the land in contest, but that having purchased a residence in Jimtown, a village two or two and a half miles distant from

the land in contest, he moved into it in the latter part of the winter of 1871, and continued to reside there with his family until in January or February, 1873, when the residence in town was sold to pay the purchase-money. He then moved into another house in the same village (which he did not own, however), and there remained until the last of February or first of March, when he removed to and occupied his former dwelling on the farm. During his residence in Jimtown his son, W. J. Goodman, resided in the dwelling-house and cultivated a part of the farm; another portion was cultivated by J. T. Goodman, who had a tenant residing on the land.

Although the evidence does not show with certainty the date at which he determined to return to the farm, or at which he actually removed to it, we assume, for the purposes of this case, that he decided to return before the executions came to the hands of the officer, and that he did return before they were levied.

The circumstances under which he went to reside in town,the length of time he remained there, and the fact that he only determined to return after his town property had been sold, leave no doubt that his residence in town was intended to be permanent, and that when he left the farm he had no present purpose to return to reside on it again.

1. Does the exemption provided by the statute extend to and embrace a case like this, where the debtor having had a residence on the land under circumstances which entitled him to a homestead abandons that residence and moves away without any intention of returning to it, and continues to reside elsewhere until an execution has created an inchoate lien, and then returns to reside on the land before a levy is actually made?

This court said in Brown Bro. & Co. v. Martin & Co. (4 Bush, 50) that "the right of exemption depends upon the present and actual purpose and intention of the debtor to use

and enjoy the property sought to be exempted as a home for himself and family, and that right does not exist where the residence of the debtor and his family is permanently located elsewhere."

The residence of J. T. Goodman and his family having been permanently located elsewhere, he ceased as soon as that occurred to have a right to an exemption in the farm on which he had previously resided. The fact that he still controlled and cultivated a part of the farm and had a tenant residing on it could not preserve the right to the exemption after he had acquired a permanent residence in another place.

Having lost his right to the exemption, his unexecuted intention to return and reside in his former dwelling could not reestablish that right. This could only be done by making it the actual residence of his family, which was not done until after the appellants' executions had created a lien on the land which was completed by the levies; and being thus completed the lien related back to the dates when the executions came to the officer's hands, and as he did not actually acquire a residence on the land until a time subsequent to that to which the liens relate, it results that the court erred in adjudging that he was entitled to a homestead as against the appellants.

To hold that he is entitled to the exemption is to decide either that the mere intention of the debtor to occupy real estate as a residence for his family at some future period, or that an actual occupancy, although commenced after executions against his estate have created a lien on it, will overreach the lien and thus defeat the rights of creditors by acts or shifts of debtors done or made after those rights had been acquired.

2. The appellants alleged in their answer that the deed from J. T. Goodman to W. J. Goodman was made without consideration and with the fraudulent intention to cheat, hinder, and delay the creditors of the former; and without in express terms making the answer a cross-petition or counter-claim against

the Goodmans, they prayed that the deed might be canceled and the land sold to pay their debts.

To this no answer or reply was filed, and it is now insisted that the court erred in not taking these allegations as confessed and rendering judgment to cancel the deed and sell the land.

The answer contained no denial of the allegation that a deed had been made to W. J. Goodman and that it was recorded before the executions issued, and the pleadings thus made a *prima facie* case for Goodman, and then by way of avoidance it was alleged that the deed was fraudulent; but these averments were necessary as a defense to the plaintiff's action, and in order to defeat the plaintiff, W. J. Goodman, his deed having been regularly recorded before the emanation of the *fi. fas.*, it devolved on the appellants to prove that it was fraudulent. The question whether the deed was fraudulent was thus placed directly in issue by the petition and answer, and if there had been a reply to the answer there would have been two issues between the same parties, involving precisely the same questions, and it was therefore not necessary to reply to the allegations of the answer. A judgment on the issue made would have had precisely the same effect as a judgment on an issue made by a reply controverting the allegations of the answer.

We are therefore of the opinion that the court did not err in failing to take the allegations of the answer as true, and the judgment is *affirmed* as to W. J. Goodman, but is *reversed* as to J. T. Goodman, and the cause is remanded with directions to dismiss the petition.