Mattingly & Co. v. Berry.

CASE 95—PETITION EQUITY—SEPTEMBER 16.

# Mattingly & Co. v. Berry.

### APPEAL FROM DAVEISS CIRCUIT COURT.

HOMESTEAD.—Where a debtor, after leaving his home in one town moved
to two other towns in succession, engaging first in one business and
then in another in the last town to which he moved, he can not, after
the property originally occupied by him as a home has been sold to
satisfy a debt contracted by him while thus engaged in business, be
allowed to claim a homestead therein upon the ground that his
abandonment of his home was only temporary, and with a fixed
purpose to return, his conduct being inconsistent with such an inten-
tion.

R. S. TODD FOR APPELLANTS.

There was an abandonment by appellee of his homestead, his conduct
being inconsistent with "a fixed purpose to return." (Carter, Fisher
& Co. v. Goodman, &c., 11 Bush, 228; Burch v. Atchison, &c., 6 Ky.
Law Rep., 636; Curran v. Culf, Adm'r, 13 Ky. Law Rep., 84; Neth-
ercutt v. Herron, &c., 10 Ky. Law Rep., 247.)

BIRKHEAD & CLEMENTS FOR APPELLEE.

The homestead right is not forfeited where there is a mere temporary
removal with the intention to return at some future time and make
the premises a home. (Hansford v. Holdam, 14 Bush, 210; Here-
forth v. Zimmerman, 7 Ky. Law Rep., 669; Davis v. Pritchard, 9
Ky. Law Rep., 914; Black v. Black's Adm'r, 11 Ky. Law Rep., 378;
McFarland v. Washington, 12 Ky. Law Rep., 876.)

·CHIEF JUSTICE BENNETT DELIVERED THE OPINION OF THE COURT.

In the spring of 1886, the appellee purchased and
built upon a lot in the town of Yelvington, which he
thereafter ·occupied with his family as a homestead,
until October of the same year. He then moved to
Knottsville, in the same county, and there went to
housekeeping, and engaged, while he lived at that
place, which was· six or seven months, in collecting
taxes. He says he moved to said place and there

lived because it was nearer the center of the taxing district. He then moved from that place with his family to the city of Owensboro, and there engaged in the business of hotel-keeping in partnership with Mr. Aull; he continued in said business several months, and during the continuance of said business, he created the debt for the purchase of whiskies, for payment of which the house and lot in Yelvington was sold. When he quit the hotel business, he engaged in the business of butchering in said town.

In July, 1888, and before the appellee had returned to said property or indicated any intention to do so, the house and lot was sold under execution to satisfy said debt. The appellee then brought this suit to recover said property as a homestead, alleging that he only abandoned it temporarily with a fixed purpose at the time to return and occupy it as a homestead. Did he have, at the time he left said property, a fixed and actual purpose and intention to return and reside on the property again, and did that intention continue to exist to the time of the sale of the property? That is the question.

It is well settled by this court, that in order for a person to claim his homestead as against the rights of creditors, after abandoning the same, the abandonment must be temporary, with a fixed purpose at the time of abandonment to return to said property and occupy it as a homestead. (Carter, Fisher & Co. v. Goodman, &c., 11 Bush, 228; Burch v. Atchison, &c., 82 Ky., 585; Curran v. Culf, Adm'r, 13 Ky. L. R., 84; Nethercutt v. Herron, &c., 10 Ky. L. R., 247.)

Vol. 94—35.

Mattingly & Company v. Berry.

It seems that the appellant's moving to Knottsville to collect taxes was entirely consistent with the idea of a removal for a temporary purpose and would so indicate; but his thereafter moving to the city of Owensboro and engaging in the hotel business, and after having failed in that business, engaging in butcher's business would indicate that he had left his home at Yelvington with the fixed purpose of permanently abandoning it. His movements clearly indicated that purpose, and the persons with whom he dealt and contracted debts doubtless understood it that way, and that the property at Yelvington was subject to his liabilities. Now it seems that after giving to the persons with whom he dealt the reasonable assurance that he had permanently abandoned his old homestead and made his home elsewhere and contracted debts on the faith thereof, it would be a deception and a fraud upon them to allow him to claim a homestead in said property by making known, after incurring these obligations, his secret intention of returning to said property and occupying it as a homestead. (See 6 Ky. L. R. *supra.*)

The judgment is reversed, &c.