## Moody, et al. v. Barker.

(Decided June 4, 1920.)

### Appeal from Warren Circuit Court.

1. Husband and Wife—Execution of Note in Foreign State—Payment.—Where a married woman executes a note in a foreign state, by the laws of which she has power to make the particular contract in her own name, so as to bind herself and her property, both real and personal, the payment of the debt, may, through comity, be enforced in this state by the subjection of her real estate, located here, to its satisfaction. But comity, existing only as a favor or courtesy, can not be insisted upon as a right, and where to enforce the foreign law would conflict with a settled rule of public policy of the forum, it will not be done.

2. Homestead—Exemption to Married Woman.—A married woman owning and living upon land and occupying it with her family may claim homestead exemptions in it as provided by section 1702 of the Kentucky Statutes as against a debt contracted by her.

3. Homestead—Conversion of Debt Paying Property Into Exempt Property.—The homestead exemption may be claimed and allowed as against a debt created prior to the acquisition of the land if it was paid for with money or property devised to the debtor, since in such case it cannot be said the debt was created on the faith of the property invested in the homestead and the creditor has not been prejudiced by reason of the debtor converting any debt paying part of his estate into exempt property.

W. R. GARDNER, J. W. THOMAS and R. C. P. THOMAS for applants.

BRADBURN & HARLIN and SIMS, RODES & SIMS for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellee and plaintiff below, G. W. Barker, obtained a judgment in the district court of Sumner

county, Kansas, against the appellants and defendants below, Sudie E. Moody and her husband, J. W. Moody, for the sum of $597.38, with interest and costs. He obtained a duly certified copy of that judgment and filed suit on it against the same defendants in the Warren circuit court, in which he obtained an attachment which was levied upon a small piece of real estate in that county containing about eleven acres, and upon which the defendants and their family resided.

A demurrer was filed to the petition upon the ground that the Kansas judgment was certified by the deputy clerk of the Kansas court instead of the clerk himself, but the demurrer was overruled and a corrected copy of that judgment was filed, which was certified to by the clerk; so that this error, if one, was cured.

An answer was filed consisting of a denial, which denial was refuted by the properly certified copy of the Kansas judgment. Another defense made was that the defendants were husband and wife, and that the note upon which the Kansas judgment was rendered was the debt of the husband alone, he being principal therein, and that it was signed by the wife as his surety, only; that the attached property was her separate estate, and that she at no time had set it apart for the purpose of paying the note or the judgment, by deed, mortgage or other conveyance, as required by section 2127 of the Kentucky Statutes. It was further averred in this connection that under the laws of the state of Kansas it was competent for a married woman to obligate herself personally as surety for another, including her husband, and to render her property liable therefor as though she were entirely free from the disabilities of coverture. Another defense was that the husband and wife, after the rendition of the Kansas judgment, moved from Kansas to Warren county, Kentucky; that Mrs. Moody received, through a bequest from a deceased aunt, the sum of $900.00 in cash, with which she purchased the eleven acres sought to be subjected by the attachment; that the deed to the land was executed to her, and that she and her family resided on it as a homestead; that the homestead laws of Kansas are the same as in Kentucky with the exception that a housekeeper in Kansas who would otherwise be entitled to the homestead exemption could claim it, although the homestead was purchased after the creation of the debt which was sought to be realized by its subjection.

A demurrer filed to the answer was sustained, and defendants declining to plead further, judgment was rendered in favor of plaintiff in which the attachment was sustained and the property ordered sold for the satisfaction of the debt, and complaining of that judgment the defendants prosecute this appeal.

The defense relying upon the wife's non-compliance with section 2127 of the statute, so as to subject her property to the payment of the debt, presents a question upon which there is a great diversity of opinion among the various courts. It may be stated without exception that if under the *lex loci contractus* the contract for any reason is void, it will be invalid everywhere, and will not be enforced by the *lex fori*, although it would be valid if executed in that jurisdiction. It is likewise practically universally held that if the one sought to be held had legal capacity to enter into the contract at the place where it was made, or where it was to be performed, and if it was transitory or concerned movable property, it will be upheld and enforced by the *lex fori*, although the defendant was incapacitated under its laws to make the contract. The enforcement of such a contract by the *lex fori* is because of comity between the different states and countries. It can not be claimed as a right, since under it the recognition by the forum of foreign laws is by virtue of a species of favor or courtesy toward the other sovereignty; hence it will be denied when to do so would violate some established rule of public policy, prevailing in the jurisdiction of the forum. In all cases the rules with reference to procedure and matters pertaining exclusively to the remedy are governed by the *lex fori*. These general rules will be found stated and extensively discussed in the annotations to the cases of Union National Bank v. Chapman, 57 L. R. A. 513; Mayer v. Roche, 26 L. R. A. (N. S.) 763; International Harvester Co. v. Gertrude McAdam, idem. 774; Wharton's Conflict of Laws, vol. 2, sec. 428a, and Elliott on Contracts, vol. 1, sec. 432. In stating the above general principles we have assumed that the domicile of the contracting parties was identical with the place of the contract, since such is the fact in this case.

It is insisted by defendants that it is the public policy of this state as declared by the section of the statute, *supra,* that a married woman's property shall not be subjected to a debt for which she was surety only, except in the manner pointed out in the statute, which statute it

is claimed was enacted in furtherance of such public policy, for her benefit and in order to protect her from some supposed domination of her husband. But if it should be conceded that the opportunities for such domination once existed because of inequalities in the legal status of the parties with reference to capacity to contract, to own and control property, &c., later modifications of the law have largely removed those opportunities, since today the wife stands on almost an equality with her husband before the law with reference to property and property rights, as well as contractual capacity and political privilege, and his only superior power through which he might exercise domination is physical strength, which, happily, he is likewise prevented from employing. But, however this may be, this court, in the cases of Gibson v. Sublett, 82 Ky. 596, and Young's Trustee v. Bullen, 19 Ky. Law Rep. 1561, held that the wife, as well as her property, was liable to the payment of a debt contracted by her in a state under whose laws the contract was valid, and where here property could be subjected to the discharge of its obligations, although neither she nor her property would be liable if the contract had been entered into here, and in each of the cases the separate property of the wife was held liable for her debt contracted in the foreign state.

As the time of the rendition of the opinion in the Gibson case, section 2127, *supra*, had not been enacted; but at that time, under the provisions of sec. 2, article 11, chapter 52, General Statutes 1888, a married woman's real estate could be subjected to her debts only when they were contracted by her before marriage or for necessaries for herself and family after marriage, but in the latter case the debt must have been evidenced by writing signed by her. The debt involved in that case was not contracted by the wife before marriage, nor for necessaries after marriage. It was made in the state of Louisiana, where both she and her property were liable for the particular character of debt, and this court held that her real estate in this state, under the law of comity, could be subjected to the payment of that debt.

The debt involved in the Young case grew out of a note executed by the wife in Missouri before the enactment of section 2127 of the statute, but the debt was contracted after marriage and was not for necessaries for the wife or any member of her family, but this court

subjected to its payment her real property situated in this state, as was done in the Gibson case. We find no cases from this court in conflict with the doctrines announced by the cases referred to.

The case of Brown v. Dalton, 105 Ky. 669, relied on by defendants, is not so, nor is the case of Griswold v. Golding, 8 Ky. Law Rep. 777 (reported only in abstract). The only question in the Brown case was whether Kentucky courts would enforce a contract between husband and wife entered into in Virginia where such contract was valid. It was held that it was so patently against the public policy of this state that it would not be enforced.

In the Griswold case the contract of the wife was executed in Missouri, under whose laws it was invalid as to her, although the same contract would have been valid here, and the court, for the reason above announced, declined to enforce it here.

Whatever might be said as to the soundness of the doctrine of the Gibson and Young cases, the rule of *stare decisis* would compel us to recognize and follow them. We therefore conclude that the court properly sustained the demurrer to the defense now under consideration.

That portion of the answer relying on the homestead exemption presents to our minds a valid *pro tanto* defense, and the demurrer thereto was improperly sustained. Section 1702 of the Kentucky Statutes exempts from sale for the satisfaction of a debt the homestead, not exceeding in value the sum of $1,000.00, "owned by debtors, who are actual *bona fide* housekeepers with a family, resident in this Commonwealth." This court, in the cases of Herring v. Johnson, 24 Ky. Law Rep. 1944; Lee & Hester v. Hughes, 25 Ky. Law Rep. 1201, and American National Bank v. Matthews, 124 S. W. (Ky.) 811, held that a married woman could claim the benefit of the homestead exemption when she owned the homestead in her own name. So that if the right otherwise exists, Mrs. Moody is not deprived of it from the fact that she may not be regarded as the head of the family.

In the cases of Meador v. Meador, 88 Ky. 217; Jewell v. Clark, 78 Ky. 398; Spratt v. Allen, 106 Ky. 274; Miller v. Bennett, 11 Ky. Law Rep. 391; Burrow v. Maxon, 129 Ky. 578; Frizzell v. Russell, 155 Ky. 631; Staun v. Proctor, 152 Ky. 142, and Roberts v. Adams,

29 Ky. Law Rep. 848, this court held that the debtor could claim his homestead right in land which was inherited by him after the creation of the debt if he was in the occupancy of it at the time it was sought to be subjected, and in a number of cases it has been held that the proceeds of a homestead may be invested in another one if done within a reasonable time after the sale, and the newly acquired one will be exempt though purchased after the creation of the debt.

In the cases of Burrow v. Maxon, 129 Ky. 578; Holcomb v. Hood, 8 Ky. Law Rep. 255, and Staun v. Proctor, *supra*, it was held that the homestead exemption would prevail against a prior debt where the homestead was acquired by gift, and in the case of Hester v. Lynn, 20 Ky. Law Rep. 1460, it was held that the debtor was entitled to the homestead exemptions in land purchased with money inherited from his son as against a prior debt when he was occupying the homestead at the time it was sought to be subjected.

In all of the cases referred to the reason for upholding the homestead exemption as against prior debts was that "the creditor has not been prejudiced because the debtor has not converted any debt paying part of his estate into exempt property" (Roark v. Bach, 116 Ky. 457), and its allowance was not forbidden by the exception in section 1702 withholding the exemption as against debts or liabilities existing prior to the purchase of the homestead.

The same reason for upholding the exemption as against prior existing debts is thus stated in the case of Jewell v. Clarke, *supra,* and quoted with approval in the case of Burrow v. Maxon, *supra*:

"The object of this provision was to prevent debtors from purchasing homesteads after creating debts or liabilities, and then claiming the exemption against such debts. The means with which a homestead was purchased might be the very means to which the creditor looked for payment, and gave the debtor the credit which enabled him to create the debt; and it would be unjust to the creditor to allow the debtor, by thus investing in a homestead, the means on the faith of which he obtained credit to defeat the collection of the debt. But, when the debtor derives title to the homestead by descent, no injury is done the creditor in exempting the homestead so acquired. The means upon the faith of which he gave credit have not been diverted, and the

case does not, therefore, come within the reason of the statute, and the rule that a case not coming within the reason of a remedial statute is not affected by it applies.''

We are convinced that the facts of this case, which are admitted by the demurrer, bring it strictly within the principle of the cases referred to, and that Mrs. Moody manifested her right to the homestead exemption as against plaintiff's debt, although it was created before the acquisition of defendant's homestead. The exemption laws of Kentucky being a part of the remedy (Barker v. Brown, 17 Ky. Law Rep. 1172, and Minor on Conflict of Laws, sec. 209), will be enforced here under the rules heretofore referred to.

The court therefore erred in sustaining the demurrer to that portion of the answer relying upon the homestead exemption, and the judgment is reversed with directions to overrule the demurrer to that part of the answer, and to proceed in accordance with this opinion.