# Tyler's Executor v. Williamson et al.

(Decided February 24, 1931.)

WEBB & WEBB and LON ADAMS for appellant.

HERSCHEL T. SMITH for appellees.

OPINION OF THE COURT BY JUDGE WILLIS—Reversing.

The sole question presented by this appeal is the right of T. E. Williamson to the value of a homestead in the proceeds of property sold under a decree. Williamson owed W. W. Tyler $13,184.80, secured by a vendor's

lien on a certain farm sold by Tyler to Williamson. Williamson owned an adjoining farm upon which the Federal Land Bank had a first mortgage. He executed a second mortgage upon the same farm to J. C. Browder, his father-in-law, and also executed to the First National Bank of Fulton a chattel mortgage upon his personalty. Tyler's executor instituted an action to vacate the mortgages last mentioned as fraudulent, and by an amended petition broadened the attack by alleging that both mortgages were given in contemplation of insolvency, with intent to prefer the grantees over other creditors, and for the purpose of defrauding plaintiff and other creditors.

A judgment was rendered in favor of Tyler's executor, enforcing his vendor's lien. The property was sold for $7,600, which was more than the appraised value, but considerably less than the debt due Tyler.

The court then adudged the mortgages given to Browder and the First National Bank to be preferential, and to be treated, under the act of 1856 (section 1910, Kentucky Statutes) as an assignment for the benefit of all creditors of Williamson. Williamson claimed $1,000 of the proceeds of the sale of the land as exempt to him in lieu of a homestead. The court found that Williamson was entitled to $1,000 as the value of his homestead right in the land, and, the fund remaining being insufficient to pay the balance due on Tyler's debt, his surviving executor has prosecuted an appeal from the judgment.

Williamson testified that he was a farmer and owned the land in question long before he bought the Tyler place, or executed his obligation to Tyler. It had a substantial dwelling where he had resided with his family, and also a tenant house which was inadequate to accommodate his family. In January, 1920, shortly after he acquired the Tyler place, the old home was destroyed by fire, and he then moved into the house on the Tyler place, which was just across the road. He lived there for three or four years, when he moved to the town of Fulton, where he is now living, and where he has continuously lived for six or seven years. He does not own the place where he resides in Fulton. The first lien on the land in which he claimed his homestead is for about $4,600 in favor of the Federal Land Bank. No improvements suitable for the housing of his family are now on the land. He said he had been at the farm nearly every day, and,

although he had a tenant on it, he still managed it from his place of residence in Fulton. He claimed he had never abandoned the homestead, but intended to build a home when he got able and return there to reside. The residence and other improvements on the Tyler place were substantially as good as the ones on the place where the family lived before the house burned. He had remained in Fulton six or seven years where his children attended the schools. He voted in the precinct where the farm was, and it is stated in his brief that he held office there. He said that he did not buy the Tyler place to keep, but as a speculation, and liked his other location better. When pressed to state when he intended to move back to the old place, he said any time when he got money enough to build a house on it. He did not know when that would be, but at the present time he was not able to do so. He further stated that his prospects for building were bad, and he had no intention of moving back until he could build a new house large enough for his family. He was asked directly whether he could state definitely when he expected to go back to his old place, and he said, ''I do not know whether I will live to or not.''

The rule is that a homestead right once acquired is not lost so long as it is used or occupied as a residence for the family. A temporary absence does not amount to an abandonment, or deprive the possession of its character as actual occupancy, if it is accompanied by an ever-present intention to return and occupy the homestead. If a homestead is once established, the length of time of absence from it is not so material, but it must be temporary in the sense that it begins and continues with a fixed purpose on the part of the claimant of the homestead to return to it and occupy it as a homestead. Clay's Committee v. Washington, 183 Ky. 756, 210 S. W. 484.

This court has repeatedly said that no hard and fast rule can be formulated by which to determine when a homestead had been abandoned, but that each case must stand or fall upon its own facts. Conway v. Reed, 193 Ky. 287, 235 S. W. 747; Elliot v. Argenbright, 221 Ky. 763, 299 S. W. 957. In the Elliot case the claim to a homestead was denied, although the debtor said he had not abandoned his home, but intended to return to it. The duration of his absence was but thirteen months.

In Mattingly v. Berry, 94 Ky. 544, 23 S. W. 215, 15 Ky. Law Rep. 288, it appeared that the debtor had left

his home and engaged in business in a town, changing successively to two other towns. It was held that his acts were inconsistent with his claim that the abandonment of his home was only temporary, and coupled with a fixed purpose to return. The declaration of the claimant that an abandonment of the homestead is temporary and coupled with a fixed purpose to return, cannot be accepted when his conduct indicates the contrary. In this case the house on the old homestead tract was totally destroyed. Williamson immediately moved into another home, owned by him, and resided there for three or four years. His acts in that respect authorized a claim to a homestead at that place while he was living there. He then moved to town, and remained there six or seven years, where he still resides, without any definite plan for rebuilding a home on the old farm. He has made no demonstration of his purpose to that end. Even now he can fix no time when he will return, or show a reasonable prospect that he will ever do so.

In Conway v. Reed, 193 Ky. 287, 235 S. W. 747, the homestead right was maintained notwithstanding a temporary absence, but it was coupled with an ever-present intention of returning; and in that case the house was not destroyed, but was always available, and space therein for the storing of household furniture had been reserved by the owner. Cf. Mason v. Southern Dep. Bank, 229 Ky. 728, 17 S. W. (2d) 1022.

In Burch v. Atchison, 82 Ky. 588, it was held that, where the rights of creditors have intervened after the occupancy of the homestead has ceased, the courts are inclined to hold that the intention upon leaving was to remain away.

In Nethercutt v. Herron, 8 S. W. 13, 10 Ky. Law Rep. 247, it appeared that a debtor had remained away from his homestead for two years. It was held to constitute an abandonment, although he retained a garden which he cultivated himself, and the claimant testified that he expected to return at a time not definitely decided.

In Curran v. Culf, 15 S. W. 657, 13 Ky. Law Rep. 84, it was held that an owner of land who had not lived upon it for several years must manifest a definite and certain intention to return and reside thereon in order to support his claim of a homestead therein. An indefinite or uncer-

tain intention, not made known in any manner until after sale of the land by the sheriff, will not suffice to sustain such claim. The fact of cultivating a farm, or having tenants thereon, does not alone maintain the occupancy required by the homestead statute. In order to establish his right to a homestead, one must put his intention into effect by actually making it his residence, and maintaining it by conduct as well as by intention.

The case of Carter v. Goodman, 11 Bush, 228, was much like the present one, and it was held that the homestead was lost.

In Smith v. Moss, 211 Ky. 226, 277 S. W. 245, a pleading was held sufficient to sustain the right to a homestead. It alleged that the homstead had not been abandoned, but an absence therefrom was temporary, with an ever-present intention of returning to it with the family, as soon as certain work, at a place some distance from the home, was completed. The claimant alleged he had retained possession of the place as a home, and had caused it to be cultivated for the benefit of himself and his family.

Many other cases hold that the court may not shut its eyes to an actual abandonment upon a mere hypothetical intention not made manifest by acts or facts conducing to confirm the purpose. Cincinnati Leaf Tobacco Warehouse Co. v. Thompson, 105 Ky. 627, 49 S. W. 446, 20 Ky. Law Rep. 1439; White v. Roberts, 112 Ky. 788, 66 S. W. 758, 23 Ky. Law Rep. 2187.

The purpose of the exemption is a favored one [Covington Bros. & Co. v. Byrns, 230 Ky. 66, 18 S. W. (2d) 870], but, in order to effectuate it the debtor must bring himself within the letter and spirit of the provision.

In the light of the authorities, we are constrained to the conclusion that the acts of Williamson were inconsistent with his claim of a homestead in the property where he resided prior to 1920. It follows that the trial court erred in allowing the value of the homestead to be taken from the proceeds of the land that was sold for the benefit of creditors.

The judgment is reversed, for proceedings not inconsistent with this opinion.