## Williams v. Evans' Adm'r.

(Decided Jan. 24, 1933.)

BENNETT, ROBBINS & SMITH for appellant.

J. D. VIA for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

The only question on this appeal is whether J. D. Williams, at the time of the filing of this action and the issuing of the attachment herein, had abandoned his homestead in the property on which the attachment was levied. The circuit court decreed against him. He prosecutes this appeal.

The right of a claimant of a homestead always turns on the facts of the particular case, when viewed in the light of the applicable, controlling principles which have been adopted by the courts.

In 1902, or 29 years before the institution of this action, Williams purchased, and began to occupy as a home, the property in controversy. His family consisted of himself and wife and their children as they were born during his occupancy of this property. His youngest child is 13 years of age, the next 21, and the other two, older.

Prior to 1928, Williams was employed as a clerk in a bank in his home town; he acquired title to a farm, his home in Clinton, Ky., where he resided, and several "tenant houses." In 1928, he lost his position with the bank. At that time he was owing the bank and others, including the debt of G. A. Evans, evidenced by a note to Evans for $5,000, dated in the year 1924. To collect the latter, this action was instituted against him; an attachment issued and levied on his home. After he lost his position with the bank, he was unable to find employment. His eldest daughter went to Memphis, Tenn., and engaged in teaching. In September, 1928, his means of sustenance was reduced to $400. He was without a job and could find none in his home town. He closed his home and went to Memphis to find employment, taking his wife and two children with him; another one of his daughters, prior to that time, having been employed at Memphis, Tenn., at $75 per month. With the salaries of his two daughters and the proceeds of his earnings from odd jobs, he and his daughters rented an apartment at Memphis and supported his family. During this time he rented the greater portion of his home at Clinton, Ky., to different tenants, and collected and used the rent in helping support himself, wife, and two infant daughters. His household

and kitchen furniture were stored in his home until in the summer of 1930, when he, his wife, and three of his daughters, returned to Clinton, Ky., and occupied several of the rooms upstairs, from four to six weeks. During this time his eldest daughter was in New York for the purpose of taking a special course in art, with the view of teaching. After completing her summer course in art, she and her next oldest sister returned to Memphis, rented an apartment for one year; one teaching and the other engaging in other employment, when they telephoned or telegraphed their father to return to Memphis with his family. He, his wife, and two children returned to Memphis where they occupied with his daughters the apartment rented by these daughters, they, with their earnings, paying the rent and supporting him and his family, he occasionally doing odd jobs. While he and his family were occupying their home at Clinton, during the four or six weeks in 1930, he worked at such odd jobs as he could obtain in his home town, one of which was staying in the county clerk's office, occasionally, and working for his wife's sister who was county court clerk at the time. Previous to the return in 1930, of himself and family, his wife's sister was a candidate for county court clerk. His wife returned to the county to vote for her sister, and did vote for her. During the absence of Williams and his family, from 1928 until after the attachment herein was issued and levied, neither he nor his wife voted, or otherwise exercised in Memphis, the privileges of a citizen. It is not shown that they connected themselves with any lodge, or church, or other civic organization. He declares that it was at all times his fixed, settled intention to return and occupy the property as his home, and permanently reside therein; that his absence was solely because of his inability to obtain employment in his home town. At the time of his departure in 1928, he was indebted to the bank. Its debt was secured by his stock in the bank, and also a mortgage on his home. The bank stock was sold and applied to the payment of its debt, leaving a balance of $600, and in order to save his home as against this balance, he arranged with his eldest daughter to help pay it, and she accordingly made small payments thereon. His sister-in-law paid a portion of the insurance premiums on the policy, insuring his home. Most of his taxes was taken care of by the

bank. At the time he returned to Memphis in obedience to the message from his daughters, requesting him to return and live in the apartment with them, a portion of his household and kitchen furniture was taken to Memphis and used by him and his family. The greater part of it was left in his home which was later rented, when another portion thereof was stored in the homes of his relatives and friends in Clinton, Ky. At the time of the taking of the depositions herein, a bed, wardrobe, table, and the linoleum on the kitchen floor were in his home at Clinton, Ky. When the attachment was issued and levied, the property was rented, and this was within the year he was residing at Memphis, occupying the apartment rented by his daughters. These facts largely must determine the question of the abandonment of his homestead. A homestead cannot be claimed by a debtor where he does not occupy the premises at the time of the levy of an attachment (Cooper v. Cooper, 230 Ky. 696, 20 S. W. (2d) 734), unless he is absent therefrom temporarily, with a fixed and ever-present intention to return and occupy such property (Conway v. Reed, 193 Ky. 287, 235 S. W. 747; Elliott v. Argenbright, 221 Ky. 763, 299 S. W. 957; Tyler's Ex'r v. Williamson, 237 Ky. 579, 36 S. W. (2d) 34). The actual removal to a location in another place, with no intention to return, is an abandonment of the homestead. American National Bank v. Mathews (Ky.) 124 S. W. 811; Mattingly v. Berry, 94 Ky. 544, 23 S. W. 215, 15 Ky. Law Rep. 288. Stronger evidence is required to establish a homestead in unoccupied property where it would be a deception or a fraud upon a creditor who had extended credit upon the faith of ownership of the property in which the debtor did not reside at the time of the creation of the debt. Conway v. Reed, supra. Evans' debt was created in 1924 when Williams and his family were actually occupying the property. This fact takes this case out of the rule last stated. Practically the only evidence presented tending to show that Williams had abandoned his homestead is his absence from the property and his statement that he was visiting, which was made in 1930, after he had returned with his family to Clinton. Such declaration is not conclusive, when considered and weighed in the light of all the facts. Galloway v. Rowlett, 74 S. W. 260, 24 Ky. Law Rep. 2503.

It is impossible to lay down an absolute rule as to the extent or character of evidence sufficient to show an abandonment of the homestead in unoccupied property, as the question must turn on the evidence of "the actual, fixed, ever-present intention" of the owner to return to such property at the end of his temporary absence therefrom. A homestead right is statutory (Brandenburg v. Petroleum Exploration, 218 Ky. 557, 291 S. W. 757), intended to afford a home for the person for whom the right was created. The statute (Ky. Stats., sec. 1702) should be liberally construed and enforced. Covington Brothers & Co. v. Byrns, 230 Ky. 66, 18 S. W. (2d) 870. If possible, in every case, it should be interpreted, with the facts in view, so as to guarantee to the family the protection and benefits intended by its enactment. Marcum v. Edwards, 181 Ky. 683, 205 S. W. 798. Williams' testimony as to his reasons for leaving his home; his ever-present intention of returning, which is corroborated strongly by the fact that he reserved space in the house for the storing of his furniture, and also by the testimony showing his and his daughter's endeavor and determination to pay the balance of the bank's debt in order to save his home, was not overcome by the evidence presented in behalf of the Evans' estate.

Considering the evidence in the light of the law as stated, it is our judgment Williams did not abandon his homestead in the property in controversy. Viewing the evidence as a whole, it is our conclusion that the circuit court erred in sustaining the attachment and subjecting the property to the payment of Evans' debt.

For the reasons indicated, the judgment is reversed for proceedings consistent with this opinion.