# Owens v. Altsheller & Co.

(Decided April 21, 1936.)

J. B. JOHNSON for appellant.

THOMAS F. YOUNG for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER,—
Reversing.

In October, 1930, Altsheller & Co. recovered judgment against L. H. Parsons and J. D. Owens for $217.11 with interest from December 15, 1930, and the costs of the action. Thereafter an execution was issued and placed in the hands of the sheriff and by him levied upon a house and lot of J. D. Owens in the city of Corbin. Plaintiff became the purchaser at the execution sale at the highest and best bid of $225.

The sheriff filed report of the sale to which J. D. Owens filed exceptions, the grounds being, in substance: (1) That the property undertaken to be sold by the sheriff was exempt to defendant and not subject to execution or sale; (2) that the sale was void because the sheriff did not comply with sections 1702, 1703, et seq., Kentucky Statutes; and (3) that while the sheriff had the execution in his hands and before he had levied on the property, he notified him in writing that he was claiming the property exempt to him under the homestead laws of Kentucky, he being a man with a family, and notified and requested the sheriff to comply with sections 1702, 1703 of the Statutes before levying on the property or undertaking to sell same under the execution, and that the sheriff failed to comply with his request or direction.

By reply plaintiff denied that the land described in the sheriff's report of sale was exempt from execution and alleged that he was not an actual bona fide housekeeper with a family residing in Corbin or elsewhere; or that he owned or occupied the land as a homestead for his family, or that he ever had a family.

After hearing the evidence, the court adjudged that J. D. Owens was not entitled to a homestead in the property in controversy and that the sale be confirmed. Owens is prosecuting an appeal as provided in the latter part of section 734 of the Civil Code of Practice, and he has also made a motion for appeal.

The undisputed evidence shows that J. D. Owens has owned the house and lot in controversy for many years. He has never married. He testified that he has occupied this property as a home and since the death of his father 16 or 17 years ago, two maiden sisters have made their home with him. A married sister, her husband and children also live there. He works for the L. & N. Ry. Co., and while in the discharge of the duties of his employment occupies a boarding car; when not so engaged he returns to his home. He stated that the two maiden sisters are dependent upon him for support, and that he furnishes food and supplies for the family and clothing for his sisters.

The older unmarried sister who is something over 50, testified that she is unable to earn her support and is dependent upon her brother, who furnishes provisions and clothing for her and her unmarried sister; that they both are dependent upon appellant and are unable to work, and that her sister received a gunshot wound in the head some years ago which impaired her mentality. To dispense with the hearing of further evidence, it was stipulated that the other two sisters residing in appellant's home would testify the same as did the older sister. It further appears in evidence that some years ago the two maiden sisters and another sister recovered judgment in an action for malicious prosecution or false imprisonment and that the former invested their portion of the recovery, which was about $400, in a lot near the property in controversy. This is used as a garden. Their nephew and another young man at one time erected a cheap building and possibly an oil pump on this lot and opened an oil station for two months, paying the owners $5 per month rent, but

the oil station was given up, and they have since received no revenue from the property. They have no income and no estate except the lot referred to. There is evidence that these sisters assist some in the household duties, but the older sister testified that the married sister and her daughter do most of the housework.

The only question to be determined is whether appellant is an actual bona fide housekeeper with a family within the meaning of section 1702, Kentucky Statutes.

As a matter of course, counsel for appellant contends that he is, and cites McMurray v. Shuck, 6 Bush (69 Ky.) 111, 99 Am. Dec. 662, Brooks v. Collins, 11 Bush (74 Ky.) 622, Bell v. Keach, 80 Ky. 42, Bosquett v. Hall, 90 Ky. 566, 13 S. W. 244, 12 Ky. Law Rep. 433, 9 L. R. A. 351, 29 Am. St. Rep. 404, and further contends that the homestead law should be liberally construed in favor of the homestead claim, citing Williams v. Evans' Adm'r, 247 Ky. 105, 56 S. W. (2d) 710, Brandenburg v. Petroleum Exploration, 218 Ky. 557, 291 S. W. 757, Marcum v. Edwards, 181 Ky. 683, 205 S. W. 798, and Covington Brothers & Co. v. Byrns, 230 Ky. 66, 18 S. W. (2d) 870.

In support of the contention that appellant is not a bona fide housekeeper, counsel for appellee cites Ramsey v. Ferguson, 107 S. W. 779, 780, 32 Ky. Law Rep. 1033, McMurray v. Shuck, 6 Bush (69 Ky.) 111, 99 Am. Dec. 662, and Bosquett v. Hall, 90 Ky. 566, 13 S. W. 244, 12 Ky. Law Rep. 433, 9 L. R. A. 351, 29 Am. St. Rep. 404. Counsel for appellee further maintains that there can be no family without dependents and appellant's sisters are not dependents, and cites Stults v. Sale, 92 Ky. 5, 17 S. W. 148, 13 Ky. Law Rep. 337, 13 L. R. A. 743, 36 Am. St. Rep. 575, and Suter v. Quarles, 58 S. W. 990, 22 Ky. Law Rep. 1080.

In McMurray v. Shuck, it was held that a debtor with an unmarried sister and two brothers all under 21 years of age living with him, whose parents were dead and whose support and education he had assumed, they being without means, constituted a family within the meaning of our exemption law.

In Brooks v. Collins, Mrs. Brooks, a widow, had two adult children living with her at the time of the institution of the action and a widowed daughter who made her home with her thereafter. The court, refer-

ring to McMurray v. Shuck and the controlling facts therein, said:

"The evident purpose and meaning of the law-making power in placing this exempted property beyond reach of creditors was to enable the head of the household to provide for himself and his family, or those who are living with him and dependent upon him for a support; and the debtor being a bona fide housekeeper, and occupying the land as a homestead with his wife or his children, adults or infants, or with his brothers and sisters, father and mother, grandfather or grandmother, or those dependent upon him, and whom, by reason of his relation to or connection with, he is under a natural or legal obligation to maintain, must be regarded as a bona fide housekeeper with a family, and entitled to a homestead."

In Bell v. Keach, it is said:

"If a debtor is a housekeeper, and has a family, composed of one or more persons besides himself, whom he is under a natural or moral obligation to support, or who are dependent upon him therefor, he is entitled to the benefit and protection of the exemption laws."

In the case of Bosquett v. Hall, which is cited and relied on by both parties, what was said in Bell v. Keach was quoted with approval, but it was held that children residing with the debtor whom he was neither naturally or legally obligated to support, they being strangers in blood to him, would not constitute him a housekeeper with a family so as to entitle him to homestead exemption.

In Ramsey v. Ferguson, supra, the debtor was claiming the property under exemption laws because an adult brother lived with him. The evidence showed that the brother was able to care for himself. The court denied the exemption, holding in effect that the debtor was under neither legal nor moral obligation to provide a home for or maintain his adult brother. However, the opinion continuing said:

"What would be the ruling of the court, if the brother were shown to be wholly incapable of caring for or supporting himself, we need not say, as

the case before us is not of that character. Cases like some of those cited by counsel for appellant may be found in which a moral or even legal obligation has been held to extend to parents, children, and unmarried dependent sisters.''

Originally the word ''family'' was used in a very restricted sense, but by gradual evolvement it has come to have a much broader and more comprehensive meaning, and especially so in the interpretation and application of homestead and exemption laws. Within the meaning of such laws a mere aggregation of individuals occupying the same home is not alone sufficient, but there must be one whom the law designates or recognizes as the head of the family who by natural ties or by legal or moral obligations is under a duty to support others of the household. See 13 R. C. L. 552, sec. 12, et seq. In the latter work it is said:

''The duty to support is also made the test. He upon whom the law imposes such a duty, growing out of status, and not out of contract, and the persons to whom he owes his duty, if dwelling together in a domestic establishment, constitute a family of which he is the head. It is not necessary that there should be any legal obligation on the part of one claiming to be the head of a family to support the members thereof; a moral duty, arising from ties of blood, or possibly other similar relations, will be sufficient.''

In the case of Cross v. Benson, 68 Kan. 495, 75 P. 558, 563, 64 L. R. A. 560, there is a history of the origin of the word ''family'' and a discussion of the broader meaning it has acquired in modern times. There is also an extended discussion of the underlying purposes and interpretation and application of homestead laws. Quoting from other authorities, it is said in part in that case:

''It is also well settled that it is not necessary that the relation of husband and wife, or that of parent and child, should exist, in order to constitute a family. * * * Nor do we think that it is necessary that there should be any legal obligation on the part of one claiming to be the head of a family to support the members thereof, but a moral duty,

arising from ties of blood, or possibly other similar relations, will be sufficient.''

Undisputed evidence discloses that appellant and his unmarried sisters have occupied this home for over 15 years. It is further apparent from the record that these sisters are unable to earn a support by their own labors and that they are not qualified to engage in professional or business activities. Appellant has recognized and met the moral obligation of supporting them rather than to impose them upon the bounty or charity of others. Viewed in the light of the authorities cited, it is apparent, and we are constrained to hold, that he is a bona fide housekeeper with a family within the meaning of the statute, and that the court erred in adjudging otherwise.

Wherefore the judgment is reversed, with directions to enter judgment in conformity with this opinion.