## Foreman v. Cook et al.

April 21, 1939.

George S. Wilson, Judge.

E. S. HOWARD for appellant.

M. L. HEAVRIN and O. C. MARTIN for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

At the time the appellant and plaintiff below, N. D. Foreman, gave his deposition in this case, as if on cross-

examination (which was on March 24, 1937), he was 48 years of age. About 13 years prior thereto, and after he had married and was the father of three children, he became indebted to appellees and defendants below in the amount of two grocery accounts aggregating about $100. Shortly thereafter his father died the owner of about 160 acres of land of little value, located in Ohio County, Kentucky, and appellant with his family thereafter moved into the residence owned by his father before the latter's death. Later the land of the father was divided by a court proceeding and plaintiff was allotted 22 acres as his share, and which included his father's residence where he (appellant) was living at the time. The 22 acres contained only 5 or 6 acres of any value for cultivation, the remaining portion being worn hill land, worth but little for any purpose, and of comparatively no productive value. In the meantime plaintiff's health failed and he and his wife concluded that they could make life easier by moving to Owensboro, Kentucky, where she could get work to do and appellant would be more accessible to physicians for treatment of his ailment and thereby be better prepared for the restoration of his health. They rented premises in Owensboro and made the move, carrying with them, of course, their then three infant children, consisting of one girl and two boys. They resided there and the wife got work, but the record does not disclose what the husband did, if anything, during their Owensboro residence.

Sometime prior to July 24, 1933 (the date not being shown in the record), differences grew up between appellant and his wife and they separated, but it is not shown in the record the nature of the disturbance of their domestic tranquility, nor is there any intimation as to who was to blame therefor, except that in a following suit for a divorce by the wife against her husband (appellant) she was successful and obtained a judgment on the date indicated setting aside the bonds of matrimony. At that time the daughter was more than 21 years of age and had married. A son next in age to her was close to 21 years of age and shortly thereafter he married—leaving only one infant child, the youngest boy, who was afflicted with epilepsy. The judgment of divorce said: "And she (the wife) is hereby awarded the care, custody and control of Hollis Foreman, the infant child of the above named parties, and the defendant is to have the privilege of visiting the said

child and having said child with him at reasonable times and should either thereof, the above named parties, marry, then they may make a new agreement regarding the care, custody and control of this infant, until further orders of this court.'' No alimony allowance was ordered in the judgment and presumptively none was asked. No other pleading or order or any part of the divorce action appears in this record.

When the parties separated (which was, of course, prior to the filing of the divorce action brought in the Daviess circuit court), the husband immediately moved back to his small Ohio county farm inherited from his father, which in the meantime became occupied by the daughter and her husband to which they removed immediately after their marriage. Appellant carried with him his infant son, who was then some 12 or 13 years of age, and the four lived together upon the inherited Ohio county farm for some two years when the daughter and her husband moved back to Owensboro, and the infant son went with them, and we gather from the record (although there is no specific evidence on the question) that he thereafter resided with his mother, who in the meantime had married the second time. Being left alone the appellant resided on his inherited farm for perhaps a year or more, but he had difficulty in making ends meet owing to the fact of the small amount of cultivatable land on his farm. He had an opportunity of renting it for an annual rental of about $50, which he consented to and did do, but not until he had rented for himself another place about a mile away from a neighbor, upon which there was a small abandoned shack and which contained more land suitable for cultivation. His wife's uncle, who was quite old and more or less feeble, had previously taken up his abode with appellant and the two moved into the rented farm located about a mile away from appellant's tract. At an earlier date appellees procured two judgments against appellant on their merchandise accounts, in the quarterly court of Ohio county.

In 1936 they procured copies of those judgments and filed them in the Ohio circuit court. They then obtained executions thereon and the sheriff levied them on appellant's inherited farm while he was living on the nearby rented place referred to. However, at all of the rentings of his inherited farm he had reserved space for the storage of some of his household goods and

which was so utilized by him. After the sheriff levied, the executions, as stated, appellant filed this action in the Ohio circuit court against his creditors in the executions against him, and the sheriff to enjoin the enforcement of the levy, on the ground that the property levied on was exempt to him as a homestead. The answer of defendants denied the averments of the petition and affirmatively pleaded that defendant had *abandoned* his homestead because of the facts hereinbefore recited. That pleading was denied and appellees then took the deposition of appellant, as if upon cross-examination, and they also took the deposition of one Patton from whom the nearby farm occupied by appellant was rented, and upon which he resided at the time of the levy.

The case was then submitted and the court dismissed appellant's petition upon the ground that plaintiff "abandoned his homestead in and to the 22 acres of land mentioned and described in his petition," and for which reason he was not entitled to the exemption contended for. It will thus be seen that the judgment was bottomed exclusively on the ground of *abandonment* of the homestead, and not upon any other ground, such as that appellant was so statused at the time of the levy of the executions (i. e., that he did not then have a family dependent upon him) as to entitle him to claim a homestead in the land sought to be subjected. From that judgment appellant prosecutes this appeal.

An examination of our opinions show beyond controversy that whether or not an abandonment of what is called a "homestead"—acquired under the provisions of Section 1702 of Baldwin's 1936 Revision of Carroll's Kentucky Statutes—has or not been abandoned is one to be determined by the specific facts of each individual case. Cincinnati Leaf Tobacco Warehouse Co. v. Thompson, 105 Ky. 627, 49 S. W. 446, 20 Ky. Law Rep. 1439; Campbell v. Potter, 29 S. W. 139, 16 Ky. Law Rep. 535; McFarland v. Washington, 14 S. W. 354, 12 Ky. Law Rep. 373; Roark v. Bach, 116 Ky. 457, 76 S. W. 340, 25 Ky. Law Rep. 699; Moody v. Barker, 188 Ky. 401, 222 S. W. 89; Conway v. Reed, 193 Ky. 287, 235 S. W. 747; Smith v. Moss, 211 Ky. 226, 277 S. W. 245; Tyler's Ex'r, v. Williamson et al., 237 Ky. 579, 36 S. W. (2d) 34; Williams v. Evans' Adm'r, 247 Ky. 105, 56 S. W. (2d) 710; Hite's Adm'r v. Hite's Ex'r, 265 Ky. 786, 97 S. W. (2d) 811; Brewer v. Brewer 268 Ky. 625, 105

S. W. (2d) 582, and cases referred to in those opinions. It is emphatically stated in all of our opinions that the determinative question always is—whether or not there is an abiding intention and purpose on the part of the homesteader to return to and occupy his homestead after the termination of the temporary removal therefrom, which it is insisted constituted the abandonment? The opinions point out that such intention is to be gathered—not only from the declarations of the homesteader—but from his actions, plus what might be termed the surroundings and environments accompanying such temporary absence from occupancy.

We will not lengthen this opinion by the insertion of excerpts from those referred to, but our general statement as to their holding is vouched for as correct and the specific expressions of the court in stating them may be found by the reader consulting them. The question, as will be found in reading the opinions, has arisen not only under rights accruing under section 1702 supra of our Statutes, but likewise as to rights of *occupancy* accruing under sections 1707 and 1708 of the same statutes. There is a marked distinction between the two rights as is pointed out in a number of the cited opinions supra, and which is particularly emphasized in the Brewer case. The right given by section 1702 is, strictly speaking, one of exemption of the property dealt with therein from levy and sale under execution, but which has come to be designated as a right of "Homestead;" whereas the rights given by sections 1707 and 1708 are strictly "rights of occupancy" by a surviving spouse after the death of the other one, and which the deceased one owned at the time of his or her death. Some of the opinions supra, as well as the text in 29 C. J. 791, section 25, appear to hold—as is stated in the Corpus Juris volume—that "Where one has acquired a homestead right as a householder, such right continues so long as the householder continues to occupy it, whether he loses one or all of the members of his family."

In support of that text there is cited among others, the case of Evansville Coffin Company v. Sumner, 189 Ky. 839, 226 S. W. 363, 364, where the distinction between the rights acquired under the sections of the statutes referred to are discussed and clearly pointed out, and wherein we said, inter alia· "To have created in appellee the right of homestead in the property under

818

[section] 1702, he must have owned an estate therein and occupied same, and in addition have been at the time of its *creation* a bona fide housekeeper with a family; but its continuance, when once created, is not dependent upon the continued existence of a family" (our emphasis), and cases found in notes to section 1702 are referred to in support of that statement, and which are: Stults v. Sale, 92 Ky. 5, 17 S. W. 148, 13 Ky. Law Rep. 337, 13 L. R. A. 743, 36 Am. St. Rep. 575; Suter v. Quarles, 58 S. W. 990, 22 Ky. Law Rep. 1080; Gowdy v. Johnson, 104 Ky. 648, 47 S. W. 624, 20 Ky. Law Rep. 997, 44 L. R. A. 400; Holburn v. Pfanmiller's Adm'r, 114 Ky. 831, 71 S. W. 940, 24 Ky. Law Rep. 1613; Riddle v. Fannin, 72 S. W. 290, 24 Ky. Law Rep. 1737; Rothwell v. Rothwell, 104 S. W. 276, 31 Ky. Law Rep. 851; Bosquett v. Hall, 90 Ky. 566, 13 S. W. 244, 12 Ky. Law Rep. 433, 9 L. R. A. 351, 29 Am. St. Rep. 404; Bell v. Keach, 80 Ky. 42, 3 Ky. Law Rep. 520, 653; Brooks v. Collins, 11 Bush 622, and Ellis v. Davis, 90 Ky. 183, 14 S. W. 74, 11 Ky. Law Rep. 893.

On the other hand there are other domestic cases which appear to hold that the *exemption* right acquired under section 1702 will not be available to the owner against appropriation for his debts if at the time the *appropriation* is sought he has ceased to be the head of a family. Although it seems to be the well settled rule that the right under section 1702 after having once accrued survives, notwithstanding the family has become disintegrated and no longer exists. See 13 R. C. L. 666, section 122. But whatever may be the correct rule in the respects indicated, the facts in this case material to the question of abandonment clearly show—by both words and action—a settled determination on the part of appellant not to relinquish his exemption rights in and to his inherited farm in Ohio county, but to return to it when conditions were propitious. In addition to reserving space for needless household furniture, throughout his entire rentals of it while absent therefrom, he did actually return to it and occupy it long before his wife sought and obtained a divorce from him and for sometime thereafter his infant son resided with him upon the premises. The judgment of divorce did not relieve him of the legal obligation to support and maintain that infant child, but which obligation rested upon him at the time of the levy of the executions in favor of appellees. The fact that the court fixed the

temporary home of that infant with its mother did not lift the burden of its support and maintenance from the shoulders of appellant, and especially is that true when the judgment itself fixed that status only for the period of the mother's widowhood and expressly provided that upon her re-marriage—if it should occur—the status of the infant was subject to arrangement between the mother and father, and the right of the widow to the custody of the child under the judgment thereupon immediately ceased.

We, therefore, conclude that appellant did not abandon his right of homestead exemption in and to the Ohio county farm inherited from his father, and that at the time of the levy of the execution his family consisted of himself and his infant son whom he was under a legal obligation to maintain and support, although the son at the time was not permanently residing with him, but who continued to visit him from time to time and remained with him on occasions as long as two or three weeks. Throughout the separation period, both before and after the granting of the divorce, appellant contributed, according to his undenied testimony, to the fullest extent of his financial ability to the maintenance and support of his infant son, although the amount was small but in the aggregate it was practically all of the net earnings of appellant in his apparently hard struggle for existence. During all that time he himself was most frugal in his habits and meagerly provided himself personally out of his earnings in order that he might be more abundantly prepared to contribute to the welfare of his infant son. Such was the nature of his testimony, and which is uncontradicted by any other proof or circumstance in the case. Having found that appellant's infant son was a member of his family at the time of the levy of the executions in favor of appellees, and that he was under a legal obligation to maintain and support his son, it becomes unnecessary to determine whether or not he was entitled to his exemption rights, even though he had no one dependent upon him at the time the appropriation of the farm was sought.

We, therefore, conclude that the court erred in dismissing plaintiff's petition, and the judgment is reversed, with directions to set it aside and to render one conforming to the principles of this opinion.